No. 92.—WARREN J. BOON, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

It is a good cause of challenge to the array in a criminal case, that the *tales jurors* presented on the panel and put upon the prisoner, were drawn from the Grand Jury box by the presiding Judge, and the list of the names so drawn, was furnished to the sheriff by the court, with instructions to summon them to serve as *tales* jurors on the trial.

The opinion which disqualifies a juror from sitting in a criminal case, depends upon its *nature* and *strength,* and not the source in which it originated.

This was an indictment for murder, tried in the Superior Court of the County of Greene, before Judge Merriwether, at the September adjourned Term, 1846.

For the history of the case and the errors assigned, see the opinion of the Supreme Court.

W. J. Boon vs. The State of Georgia.

F. H. Cone, for the plaintiff in error, made the following points :

1st. That on the trial of criminal cases, it is the duty of the sheriff to summon the tales jurors from the by-standers or others, and the selection of the persons thus summoned belongs exclusively to the sheriff or his lawful deputies ; and that it is not lawful for the presiding judge on a criminal trial to draw the names of persons who are to serve as tales jurors on such trial, from the box containing the names of persons who are selected to serve as Grand Jurors.—3 *Bacon's Abr.* 744; 3 *Blackstone's Com.* 355 ; 3 *Coke Litt.* 504, 524; 1 *Chit. Crim. Law,* 412, 421 ; *Hotchkiss Dig.* 222, 45, 628, 629, 702, 704 ; *Prin. Dig.* 429, 430.

2d. That where a person who is offered as a juror in a criminal trial, has answered the questions ordered to be propounded to him under the act of 1843 in the negative, so as to render him a competent juror, it is the right of the prisoner to put such juror on triors, and to prove by witnesses before the triors that such juror has formed and expressed an opinion as to the guilt or innocence of the prisoner, from *hearsay or report,* and to prove any other facts that may show that said juror does not stand indifferent between the prisoner and the State.—*Hotchkiss Dig.* 797-8 ; *Chit. Crim. Law,* 443, 447 ; 3 *Coke Litt.* 522 ; 3 *Bacon Abr.* 765, 766 ; 11 *Petersdorf,* 742 ; 40 *Law Lib.* 100-5-6-8 ; 6 *Eng. Com. Law,* 492 ; 1 *Johns. Rep.* 316 ; 3 *Stewart and Porter,* 308 ; 7 *Cowen R.* 121, 122 ; 4 *Wendell,* 229 ; 21 *ib.* 509.

J. M. Ashurst, Solicitor-General, for the State.

1st. No threat will justify a killing.—*Prince,* 642.

2d. In a criminal cause, there being a deficiency of jurors from challenge or otherwise, *the court* may order the sheriff or his deputy to summon by-standers or others.—*Prince,* 430.

3d. Who are competent jurors to try criminal causes under our law ?—*Prince,* 430.

4th. At common law, independently of our statute, it would not have been a good ground of challenge to the array, that they were taken from the intelligence of the county.—4 *Barn. and Ald.* 491.

5th. A juror who answers both questions under the act of 1843, so as to make him competent, cannot be rendered incompetent before triors, by proof of an expression of opinion from rumor or hearsay merely; but it must be shown also that such expression arises *from ill-will or individual prejudice.—Stephen's Crim. Law,* 300 ; *Joy on Con., &c.* 189 *et seq.* ; 4 *Barn. and Ald.* 502.

Suppose the court in this case had awarded triors, and the proof submitted to them that a mere expression of opinion as to the guilt or innocence of the prisoner, had been made from rumor or otherwise, and the court below had charged the triors, that this of itself, unless done with a malicious intent, would not render the juror incompetent, would this court decide that error had been committed ?

By the decision of the court in *Robinson's case,* a juror answering negatively to the questions propounded under the act of 1843 was *prima facie* a competent juror. How is he rendered incompetent ? By the rules of the common law only.

6th. The sixth article of the amendments to the Constitution of the United States, has reference alone to the trial of officers against the laws of the United States.—3 *Story on Constitution,* 652-6.

The Constitution of Georgia prescribes the fundamental law, and fixes the right of trial by jury of offenders against her own laws. And the Legislature has a right to prescribe any law, not inconsistent with the State Constitution, for the trial and punishment of offenders against the State laws.—*Prince Dig.* 91-2.

*By the Court*—Lumpkin, Judge.

This was a writ of error, to a judgment of the Superior Court of Greene County. The plaintiff in error was indicted for murder, convicted and

sentenced to be hanged. There are several objections raised to the record and proceedings in the case.

It appears that when the prisoner was put on his trial and the jury about to be sworn, the defendant challenged the array, because the same was not arrayed by the sheriff or his lawful deputy—so far as related to the *tales* jurors presented on said panel; but that said *tales* jurors, to wit the eighteen last named in the array, were not summoned from the by-standers or others according to law; but that the names of the *tales* jurors were drawn from the grand jury box by the presiding judge; and the list so drawn was furnished to the sheriff, by the court, with instructions to summon them to serve in the case: and the persons so drawn were those presented as *tales* jurors in said array. Whereupon the defendant prayed that the array might be quashed, which motion being overruled the prisoner by his counsel excepted.

In the further progress of the case, Adam G. Scott was presented and put upon the prisoner as a juror; and the counsel for the prisoner, for the purpose of ascertaining his competency, proposed to ask him, under the act of 1833, " whether he had formed and expressed an opinion in regard to the guilt or innocence of the prisoner at the bar." The court would not suffer this to be done, holding that the only questions which could be put to the juror on his *voire dire*, by the court, were those prescribed by the act of 1843, namely: " Have you, from having seen the crime committed or having heard any part of the evidence delivered on oath, formed and expressed an opinion in regard to the guilt or innocence of the prisoner at the bar?" " Have you any bias or prejudice resting on your mind for or against the prisoner at the bar?" To which opinion of the court defendant's counsel excepted.

John Branch was then offered and put upon the prisoner as a juror; and the two interrogatories prescribed by the act of 1843 having been successively propounded to him on his *voire dire* and answered in the negative, the prisoner moved to put him on triors, in order to prove by witnesses, before them, that the juror had formed and expressed an opinion, as to the guilt or innocence of the prisoner at the bar, from hearsay or report. The court refused to allow this, whereupon the accused, by his counsel excepted.

Defendant's counsel, in the course of the case, inquired of a witness, John C. Durham, whether the deceased had not made threats against the prisoner, which were communicated to him before the homicide was committed. The court ruled out the evidence as inadmissible to justify the killing. Whereupon counsel for defendant excepted.

The *second* and *fourth* grounds of error, have been abandoned by the counsel for the accused. On the *third*, to wit, the refusal of the Circuit Judge to permit John Branch to be put upon triors, for the purpose of ascertaining his competency, this court would be compelled to award a new trial in accordance with the opinion, just delivered in the case of *Kinchen P. Boon* vs. *the State.*

Before, however, dismissing, this branch of the exceptions, I would remark, that a juror's competency should, in every case, be tested by the *strength* of his conviction and not by the *nature* or *degree* of testimony which produce it.

Chief Justice Spencer, on the trial of Van Alstyne, for the murder of

Huddlestone, stated the principle adopted by him to be this : "If a person had formed or expressed an opinion for or against the prisoner, on a knowledge of any of the facts attending the murder, or *from information of those acquainted with the facts*, he considered it good cause of challenge ; but if the opinion of jurors were founded on mere rumor or report, he decided that such opinion did not disqualify the jurors."

Now, this rule which certainly has the recommendation of being clear and explicit, has been *nominally* followed by the courts of several of the States, and that of our southern sister Alabama among the rest. Indeed, the Legislature of this State has made it a matter of express statutory regulation. And yet the Supreme Court of Alabama, in the trial of Coleman Williams, in its comments upon Pollard's case, decided by the General Court of Virginia, have shown conclusively, how unsafe and unsatisfactory a criterion of impartiality is the arbitrary standard set up by Judge Spencer, as every other will be in practice not founded in the reason of things. This is not a place for the bed of Procrustes, but for a rule flexible and malleable, and which can be moulded, in the minds of the triors, to adapt itself to the ever-varying circumstances of each individual's opinion. John H, Parker was held to be an impartial juror, by the General Court of Virginia, *notwithstanding he had formed, and thought he had expressed, an opinion unfavorable to the prisoner, from having heard one of the witnesses testify.*

The Supreme Court of Alabama justify this decision although in the very teeth of the principles asserted by the Chief Justice of New-York. Says Judge Taylor : "It does not appear what kind of testimony the juror heard ; it may have been altogether circumstantial, and although it was sufficient to impress him with the idea, that the accused was guilty, it is true, yet that impression must have been quite unsettled, which was evinced by the slight recollection he had with regard to it ; and, we must suppose, had not made any such impression on his mind as closed it against the full effect of the testimony which might be offered on the trial."

So much for Chief Justice Spencer's rule, which excludes a juror whose opinion is formed "from the information of those acquainted with the facts," and the commentary of the court *professedly adopting* it ! The judgment of the Virginia court justified and approved the rule, which pronounces a juror indifferent between the prisoner and the State, although he has formed, and, he thinks it probable, has expressed, an opinion, that the defendant was guilty, *from having heard a part of the testimony, on oath, in open court !*

The other branch of the proposition stated by the Chief Justice, will be demonstrated, in practice, to be equally defective and untenable.

The most inveterate impressions, such, even, as will not yield to " confirmation strong as *proof from Holy Writ*," are not unfrequently created by rumor ; and if an opinion be thus firmly riveted in a mind so weak or wicked that it will not yield to the force of testimony, even though the juror is under the solemn sanction of an oath to give his verdict according to the evidence, ought not such an opinion to operate as an exclusion, notwithstanding it be founded on report, or anything else ?

We return, then, with abiding confidence in the simplicity and soundness of the principle established by this court ; namely, that it is the *nature* of the opinion which the juror has imbibed, which must decide his

competency, regardless of the source in which it originated. A rule which should commend itself to all, securing, as it infallibly must, a trial, in all cases, in the county in which the offence was perpetrated; and by a jury, either selected by the prisoner himself, or by those, *as triors*, whom he has accepted to pass upon the merits of the indictment.

Forced, as we are, to reverse the judgment below, on this ground, we shall consume but little time in disposing of the *first* objection, to wit, the challenge to the array, because the *tales* jurors were drawn by the court from the grand jury box, and the list furnished to the sheriff, to be by him summoned to constitute the jury.

We are not prepared to say, that a *grand juror* is *disqualified, as such,* from serving on the trial of a criminal case. Such a decision was once made by a distinguished judge of this State, and I may add, not without reason. It is the duty of the grand jury to accuse the defendant; of the petit jurors to try him. When, from challenge or otherwise, there shall not be a sufficient number of jurors to determine causes, it is made the duty of the sheriff to summon by-standers, or others, qualified as required by law, to complete the panel. What is meant by this? *Tales-*men, to fill up the grand jury list, are to be summoned from that class who belong to the grand jury list. Is not the reverse of this equally true, that when a full panel is needed to try criminals, *tales-men* are supplied from the petit jury list? Can any others be rightfully denominated *tales-men*, to make up a full panel by additions to the twenty-four or twelve, as the case may be, already in attendance? Are grand jury men *such like* men as these?

Scrutinize carefully the act of 1805, and see the distinction obviously made between *grand jurors* and those for the trial of civil and *criminal* causes, or *petit jurors!* Reflect, too, upon the directions given by our law for the selection and drawing of grand juries, and does not the conviction fasten itself on the mind, that the sealed box containing their names, is only to be opened, from term to term, for the *sole* purpose of drawing a *grand jury proper*, and that it is an unauthorized innovation of the sanctity of that seal, to break it for any other purpose?

By the 38th section of the judiciary act of 1799, " all free male white citizens, above the age of twenty-one, and under sixty years, are declared to be qualified as *petit jurors*, for the trial of all *civil* causes; but for the trial of treason, felony, breach of the peace, or any other crime, or of any title to real estate, *they* (that is the *petit jurors* mentioned in the previous part of the section) must be qualified to vote at elections for members of the Legislature. This provision, unquestionably, does not apply to the grand jury. In strictness, then, whence the right of grand jurors to sit on the trial of criminal cases? They have not been detailed specifically for this duty, and if it be claimed for them, as being by-standers and others, *tales de circumstantibus*, under the 44th section of the judiciary, then, by parity of construction, *petit jurors* would be entitled to be summoned, as *tales-men*, to complete the grand inquest, in case a sufficient number should not appear to be sworn. Still, the courts, perhaps, would not feel warranted in rejecting from the jury any citizen, otherwise competent, who was within the lawful age, had paid all taxes, &c.

There are other and better reasons for discouraging this practice.

The law devolves the duty of summoning the jury upon the sheriff or his deputy ; and if they are disqualified, then upon the coroner, or such other disinterested· person as the court may appoint. The *ministerial* officer acts upon his official responsibility, and for any misconduct, the party aggrieved has his redress.

We are aware that courts, in their praiseworthy enthusiasm to suppress crime, have, in some instances, even dictated to the sheriff, from the bench, the individuals to be summoned. We cannot express too strongly our repugnance to these innovations as to the mode of trying offences. They are subversive of the great principles of the common law—principles, too, founded in a deep regard to the life and liberty of the citizen ; and I shall be pardoned, I trust, for suggesting, just here, that memorable saying of Sir Michael Foster : " Judges are ministers appointed by the crown, for the ends of public justice, and should have written on their hearts the solemn engagement his majesty is under, ' to cause law and justice in mercy to be executed in all his judgments.' " —*Foster*, 263.

For the purpose of showing with what jealousy courts watch every departure from the mode prescribed by law, in selecting a criminal jury, I would refer to *Gibson* vs. *The Commonwealth, Va. Cases*, 111 ; *Gardner* vs. *Turner*, 9 *John Rep.* 260 ; *Eaton* vs. *The Commonwealth*, 6 *Bin. Rep.* 447 ; *Mitchell* vs. *Likins*, 3 *Blackf. Rep.* 258.

But there is a stronger reason still, for arresting this proceeding. Are none but *grand jurors* the *peers* of the *prisoner*? Are *they*, on the contrary, his *fellows* in sympathy, or anything else ? Was it ever known—was it ever heard of—that *peers*, in England, were tried by yeomen, or yeomen by peers ? Will it be replied, that our law recognizes no distinction in classes in this happy country ? Still, is there none, in fact ; in sentiment, habits, and everything else, which makes one man to differ from another ? *Does not the law itself discriminate ?* Does every citizen, even all those who vote for members of the Legislature, serve as grand jurors ? Or is not this privilege limited to a few " fit and proper persons," to be selected by the justices of the Inferior Court, together with the clerk and sheriff of the county ? The statute, then, itself makes a difference. Is it not constantly observed in practice ? On the trial of overseers for the killing of slaves, are overseers or employers elected to sit on the jury ?

It is needless to disguise it, that man only is the equal of the other, who, in the legal as well as the common-sense acceptation of that term, from situation, condition in life, education, morals, employment and other circumstances, thinks as he thinks and feels as he feels.

What chance had a " *Jew dog* " in a Christian court, formerly, in Britain, and even now, in many parts of the Continent ? The prejudices of *caste*, which so warp the understanding, may not operate as strong here as elsewhere ; still they exist and vitally affect the conduct of men, often, perhaps, unconsciously to themselves.

Believing, therefore, as we do, that the practice under investigation is manifestly at war with the spirit, at least, of the great right granted to all, of being tried by their *peers*, we cannot give it our sanction.

Judgment reversed.