Tift and others *vs.* Griffin.

No. 22.—NELSON TIFT, *et al.* Justices of the Inferior Court of Baker county, plaintiffs in error, *vs.* B. M. GRIFFIN, administrator, &c. defendant.

[1.] An Act of the Legislature which authorizes the issuing of execution to collect money belonging to the public in the hands of a collector, receiver, or

depository, or any other legally appointed monetary agent, without the intervention of a jury, is not in violation of the constitutional right of trial by jury.

[2.] A Court of special or limited jurisdiction, in its proceeding, must show the jurisdiction, both as to the person and subject matter.

[3.] The Act of 1796, which authorizes the Inferior Court to issue execution without the intervention of a jury, for money belonging to the county, collected for county purposes, held to be unconstitutional, because violative of the right of trial by jury, except as to collectors, receivers, or other legally appointed public monetary agents.

In Equity, in Baker Superior Court, before Judge WARREN, May Term, 1848.

The facts are set forth in the opinion delivered by the Court.

R. K. & J. B. HINES, and LYON & CLARK, for plaintiffs in error.

STROZIER & JONES, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

It appears from the record in this case, that one John Sikes, was in his life time, indebted to the Justices of the Inferior Court for the county of Baker, by note, in the sum of eight hundred dollars, given for money in his hands, belonging to the said county. At the time of his becoming a debtor to the county, he was himself a member of the Inferior Court. In what character he acquired the funds of the county does not appear. He died, and Benjamin M. Griffin became administrator *de bonis non* upon his estate. The Inferior Court filed a rule *nisi* against him, calling upon him to show cause at the next term, why execution should not issue against him in his representative character, for the money due on the note of his intestate. The rule was served, and at the return term, he having failed to show cause, was made absolute, and upon that order execution issued against him. He then filed his bill against the Inferior Court, charging divers things, and among others, that the Act of the Legislature under which the rule was made absolute, and the execution issued, was void for unconstitutionality, in as much as it authorized a judgment without the intervention of a jury, and the estate which he represented was defeated in the right of trial by jury, and far-

ther, if it was constitutional, it did not apply to the case made against his intestate, in the rule. The bill prayed an injunction of the execution, and that the rule absolute and execution be annulled, and set aside. Upon the hearing, the circuit Judg e decided that the law under which the judgment of the Inferior Court on the rule was rendered, did not apply to the case, and if it did, it was unconstitutional. These decisions are complained of as erroneous. We think that the law does apply to the case, and herein differ with the Court below, and that it is unconstitutional in its application to this case.

The Act under which this proceeding was instituted was passed in 1796. By the second section, the Inferior Courts of the counties are authorized or required to inquire into the conduct of jailors, and the state of jails, and to remove jailors. It enacts, further, "that the said Courts shall have full power and authority to call upon all persons, their heirs, executors, or administrators, in their respective counties, who have had or may have county monies in their hands, collected for the express purpose of building court houses and jails, or for any other county purposes whatever, and in case of neglect, or refusal to pay the same, the said Court shall, and are hereby required to cause executions to be issued for the full amount, appearing to be due, in the same manner as the treasurer is authorized by law to issue executions against defaulting collectors of taxes in the different counties, and such monies may be applied by such Court to the uses and purposes of building or repairing court houses and jails." *Prince*, 169, 170.

It was argued before us and held by the Court below, that this Statute does not apply to the case, because it authorizes the issuing of execution for money *only*, which has been collected for the express purpose of building court houses and jails. The money does not appear to have been collected by the county for that express purpose, and therefore, say the counsel, it is not applicable to the case. This would be the true construction, if it were not for the words in the Act, " *or for any other county purpose whatever.*" These words, without doubt make the Statute applicable to cases where *any* persons have had, or may have money in their hands, collected by the county for *any county purpose whatever*. We think, in its terms, the Act is applicable to the

case.   The more serious question is, whether the Act be consti-
tutional.

[1.] There are two views of it.   In its application to every du-
ly appointed collecting, or disbursing agent of the Court, or to a
duly appointed custodier of the public funds, we believe it is
constitutional.   But if it be applied to all citizens who may by
contracts become debtors to the Inferior Court, in that view of
it, we think it unconstitutional.

The objection, however, to its constitutionality, was extended
to both views of this Statute.   Upon the assumption that Sikes
was an officer of the Court, appointed to receive and keep or
disburse the county funds, it is still contended, that as applicable
to him, the Act is violative of the State Constitution, because it
deprives him of the right of trial by jury.

The *5th sec. of the 4th article* of the Constitution of Georgia, is
in the following words : " Freedom of the press and trial by jury,
*as heretofore used in this State*, shall remain inviolate, and no *ex
post facto* law shall be passed."   *Prince*, 912.

The right of trial by jury, in suits at Common Law, where the
value in controversy exceeds twenty dollars, is declared to be
preserved in the 7th of the amendments of the Federal Constitu-
tion, adopted in 1789.

And these both are but the affirmance of a right which belon-
ged to the people of England and of this country, under the
*Great Charter.*   The right of trial by jury would have been as
perfect in the States of this Union, which were British colonies,
without a constitutional declaration of that right, as it is now
with it.   Yet it may be added, not so secure.

The right came with the colonists.   It was derived from *Mag-
na Charta.* It was their birth right.   They brought with them the
*Common Law,* so far as it was applicable to their condition.   They
also brought with them those principles of civil liberty ; those
personal rights, which originated with *Magna Charta*, were dor-
mant, or suppressed for long intervals in England, were revived
by Statute, re-asserted by the people in the *petition of rights*, and
confirmed by the revolution of 1688, and the *bill of rights and act of
settlement.*   In the year 1770, the Provincial Assembly asserted
their right to the privileges of the Common Law, and more especi-
ally to the " *great and inestimable privilege of being tried by their
peers of the vicinage, according to the cause of the Common Law.*"

This was done by solemn resolution of the Assembly, and was declaratory of rights which then, and prior to that time, belonged to the Colony. When the State became independent of the *British Crown*, this right of being tried by their peers, appertained to the people. It was one of the great bases of the new civil ·polity. Without a declaration to that effect, it must have been considered inherent in that system of Government, which the State adopted. But in '84, our own *Legislature* adopted the Common Law of England, and such of the Statute Laws of England as were usually of force in the province of Georgia, except so far as they were contrary to the constitution and laws and form of Government then established. By this Act, if there were no other recognition of it, the right of trial by jury was asserted, as guaranteed by *Magna Charta.* Nor was it alone the right of trial by jury in criminal cases, but also in civil cases; for that Charter provides for both. The Constitution of the United States affirmed the right in criminal cases originally, and by an amendment, in civil cases in 1789. Our Constitutions of 1777, of 1789, of 1798, adopt and affirm the right. The last, in the language before quoted, which is now the organic law of the State. What was the right as declared by *Magna Charta ?* It protected every individual of the nation, in the enjoyment of his life, liberty, and property, unless declared to be forfeited *by the judgment of his peers, or the law of the land, " nisi per legale judicium parium suorum vel per legem terræ."* The right, then, of the people of this province was, that their lives, liberty, and property should not be forfeited, but by the judgment of their peers, that is, by a trial by jury. This same right of trial by jury, as heretofore used in this State, is declared by the Constitution of 1798 to be inviolate. This brief history of the right of trial by jury, I hope will not be considered foreign to the case before me. The people of this State, then, are entitled to the trial by jury, *as it was used in the State prior to the Constitution of* '98.

According to that right as heretofore used, the plaintiffs in error contend, that this debtor was not entitled to a jury to try the question of his indebtedness. They say, that as the trial by jury was used in this State, the Inferior Court could issue execution against him, without a judgment of his peers—in short, that the Act of 1796 does not conflict with the Constitution. Our judgment is, that upon the assumption that Sikes was a public agent,

duly appointed to collect, receive, and keep the county funds, he was liable to execution, without the judgment of his peers, and that the Act is constitutional, as applicable to him in that character. We mean to say, that this great right of trial by jury, as used in this State, prior to 1798, was subject to an exception in just such a case, that the use of the trial by jury allowed of a summary process to collect the money of the public, and did not require the intervention of a jury to try the question of indebtedness, or defalcation, or whatever else it may be called.

To sustain this view of the subject, it is necessary that the money to be collected by the execution be a *public fund*, a part of the revenue of the State, raised by taxation or otherwise. It appears from the record, that the money in this case was *money of the county of Baker*, for the rule *nisi* asserts that fact. If it was money of the county of Baker, it was a public fund. That county has no right to raise money, apart from the sovereign authority of the State. The Inferior Court are by law, the agents of the State, to supervise certain interests of the whole people, within the limits of their respective counties. Such as the construction and preservation of court houses, jails and bridges; the maintenance of the poor, &c. By *this* Act they are required to erect, and keep in repair, court houses and jails. This is done at the charge of the counties respectively, that is to say, the State, by law, authorizes the raising, by taxation, a fund necessary for these purposes. The Inferior Courts are public agents, duly authorized by law, to superintend the raising, keeping, and disbursing of these funds. They do not pass into the State treasury. But they are raised by law, collected by the State's agents, the tax collectors of the counties, and appropriated for the common benefit of all the people. The general administration of the law requires court houses and jails in all the counties. For convenience, the charge devolves upon each county, and each thus contributing, and the Inferior Courts of each, thus acting as agents, the interest of the whole people is subserved. A fund, then, in the hands of the Inferior Courts, or of their agents, is a public fund, notwithstanding it be raised for county purposes. *The sovereign authority being in fact owner of a fund, it may collect it out of a defaulting agent by summary process, without the intervention of a jury.* Upon this principle it is, that tax collectors are made amenable. Upon it appearing at the treasury office that a tax collector is in

default, the treasurer is directed to issue execution forthwith against him for the amount. So also, the Inferior Court is authorized to issue execution against a defaulting collector for the county tax, or against a county treasurer. *Prince,* 850, 863. *Hotchkiss,* 856. So also, the *Federal Government* may summarily enforce the collection of its revenues, out of defaulting receivers, or other duly appointed agents. Upon like principles the State may collect taxes immediately, out of the defaulting citizen; for that purpose the tax collector is authorized to issue execution. These powers of the government are founded in an imperious necessity. They are necessary to the preservation of the government, to the administration of the law, indeed, to a maintenance of all the rights of the people. If the government were forced to submit the case of every defaulting tax payer, and tax gatherer, and financial agent to a jury, with the delays and uncertainties attending a judicial investigation, it could not command its revenue, it could not be administered. The *Federalist* in paper *No.* 83, thus speaks of this subject, " as to the mode of collecting taxes in this State, (Virginia,) under our own Constitution, the trial by jury is in most cases out of use. The taxes are usually levied by the more summary proceeding of distress, and sale, as in cases of rent. And it is acknowledged on all hands, that this is essential to the efficacy of the revenue laws. The dilatary course of a trial at law to recover taxes imposed on individuals, would neither suit the exigencies of the public, nor promote the convenience of the citizens."

The liability of the citizen, whether a tax payer or tax collector, or other financial agent, thus summarily to be enforced without the intervention of a jury, has constituted one exception to his right to trial by jury, I have no doubt in Georgia—in all the States in the Union, and in England. It has not been according to the use of the trial by jury in this State, to allow him a jury in such cases. The Constitution makes inviolate the trial by jury, as *heretofore used.* This law does not violate it, because *as used,* the trial by jury admits of this exception. There are many others, which I need not refer to. From the earliest times, the trial by jury has descended to us, through usage in England—in our Provincial state, and after the organization of our State Government, subject to this limitation. Our own Statute book shows that such has been our usage. The very act under consid-

eration is anterior to the constitution of '98. Not that I mean to say, that the act of the Legislature can make an exception to the general right, for that would be to submit the right and the Constitution to the discretion of the Legislature. The great *Magna Charta* privilege is, that no man shall be *divested of his property,* but by the judgment of his peers, or the law of the land. He must be divested according to the course of the Common Law, and not according to the Statute, to make it a legal disfranchisement. So our usage must be according to the course of the Common Law. See 2 *Ins.* 50. 19 *Wend.* 659. 4 *Hill N. Y. R.* 145, 146, 147. *Hoke vs. Henderson,* 4 *Dev. N. C. R.* 15. *Parsons vs. Bedford,* 3 *Peters' R.* 446. *Story's Comm. on the Constitution,* 3 *vol.* 661.

But I refer to our statutes simply as evidence of the usage. The remarks of *Mr. Justice Nott* upon this subject, are worth transcribing here. After enumerating a number of exceptions to the right of trial by jury, he proceeds, " and last, though not less satisfactorily established, *distress for taxes.* All these, and many others that might be mentioned, are carried on by the well known and established principles of Common Law, or *lex terræ,* without the aid of a jury. This method of collecting taxes is as well established by custom and usage as any principle of the Common Law. A similar practice prevailed in all the colonies from the first dawn of their existence; it has been continued by all the States since their independence, and had existed in England from time immemorial. Indeed, it is necessary to the existence of every government, and is based upon the principle of self preservation." And again he says, " I think, therefore, that any legal process, which was originally founded in necessity, has been consecrated by time, and approved and acquiesced in by universal consent, must be an exception to the right of trial by jury, and is embraced in the alternative, *the laws of the land.*" 2 *McCord's R.* 59, 60. Also 1 *Bay R.* 90. 2 *Brock. C. C. R.* 447. The case in *McCord,* was that of a defaulting citizen—a tax-payer. The principles applicable to such a case, it is hardly necessary to say, apply with equal, if not greater force, to a collector or receiver of the public money. If the government may, without a jury, compel a citizen to pay his taxes, *a fortiori,* it may compel its own officers to refund, when in default.

If the former is an exception to the right of trial by jury, the lat-

ter must be also. In these cases, the persons authorised to issue executions as the treasurer of the State, and the Inferior Courts, act ministerially; they have no judicial functions in this regard. The Inferior Courts have judicial powers, but I apprehend this is not one. They act as mere agents of the State. They are instructed by the act to issue execution for the amount which appears to be due. There is no issue to try—there is no judgment to be pronounced. As *auditors*, it is their business to ascertain the amount due, and then to issue execution. So, the State treasurer is the mere agent of the State. His business is to state the collector's account, and if he is in arrear, to issue execution. That these proceedings are not judicial, see *Ch. J. Marshall*, in *ex parte Randolph*, 2. *Brockenborough C. C. R.* 447. Whether viewed in the light of judicial or ministerial acts, however, I imagine is not material. If judicial, they are still exceptions. Magistrates' Courts, and others, may give judgment without a jury, in certain cases, which have been exceptions to the right of trial by jury. 2 *Blackf.* 5. *Ibid*, 8. 1 *Marsh*, 290. 6 *J. J. Marshall*, 27. 1 *Marsh*, 441. 1 *Mass.* 443. 2 *Cow.* 815. *R. M. Charlton*, 203.

But we hold that so far as others than the legally appointed collectors, receivers, or depositories of public moneys are concerned, the Act of 1796, is unconstitutional. If the Inferior Court, lend the public money to a citizen, or if he, in his private, unofficial character, becomes the debtor of the Inferior Court in any other way, then the whole character of the transaction is changed, and he is entitled to his jury. It is matter of contract between him and the Court. He is not a debtor to the public, but to the Court. They are responsible to the State—he to them. The necessity upon which the exception is founded, does not. in that case exist; the reasoning does not apply, and the usage does not sustain it. The act, in its terms, applies to all persons who have had, or may have the money of the county in their hands; it is constitutionally valid in its application to but one class of persons. The proceeding must show that the person sought to be enforced belongs to that class; it must show that he is a legally appointed agent of the Court, and through it, of the public. It charges him, simply, as having money in his hands, of the county; it does not show in what character he holds it.

[2.] A Court holding a special or limited jurisdiction, must show

by the proceedings, the case within that jurisdiction. It can take no jurisdiction by intendment. It must show, not only, that it has jurisdiction over the subject matter, but the person. This act cannot be construed to extend to other persons than monetory agents. See 2 *Brockenborough C. C. R.* 447. If that be the construction, the pleadings must conform. That they are irregular unless they show the jurisdiction of the Court, see 2 *Wils.* 382. 6 *Mod.* 224. 9 *Ibid,* 95. 9 *Cranch R.* 173. *Burrow,* 2281. *R. M. Charlton R.* 203.

[3.] Looking then at this case as a proceeding to collect a sum of money due by contract to the Inferior Court of Baker county, from the intestate of the complainant, in his private and unofficial character, it is our judgment that the Acts of the Legislature of 1796, which in its terms authorizes it, is unconstitutional, because it deprives him of the right of trial by jury.

Let the judgment of the Court below be affirmed.