## CHASTAIN & LUCK *vs.* ROBINSON *et al.*

1. What was said and done by the Justice of the Peace, at a Justices' Court, when a levy of property was advertised for sale, under executions, is inadmissible on the trial of a claim for other property levied on by the same *fi. fas.*, for the purpose of accounting for a proper disposition of such previous levy, or for any other purpose.

2. The declarations or statements of one who is no party to the record, and who in no other war appears to be a party in interest, is not competent evidence to affect the rights or interests of the plaintiffs, or parties before the Court.

3. The Court should always, upon request, charge the jury specially as to any fact relied on by either party, that is true and material, so as the jury may be advised by the Court of its legal effect and application to the issue they are trying.

Claim, in Chattooga Superior Court. Tried before Judge CROOK, at September Term, 1859.

This was a claim interposed by F. W. Cheeney to a lot of land levied on as the property of A. G. Robinson, by virtue of two *fi. fas.* issued from a Justices' Court in Hall county, in favor of Chastain & Luck, for the use of C. & J. Peeples, against said Robinson.

Upon the trial, claimant, amongst other evidence, introduced one Wesley Shropshire, who testified, that he was in

Milledgeville on the 14th December, 1855, as Senator from Chattooga county, and that James Cantrell was there as Senator from Lumpkin county; that Cantrell spoke to him about some *fi. fas.* against A. G. Robinson, and that there was a lot of land in Chattooga county which was subject to said *fi. fas.;* witness knew that Dr. Cheeney claimed said land, and he wrote and informed him of the fact, and Cheeney answered witness to see if the *fi. fas.* were all right, and to settle them; witness went to Cantrell and told him that if the *fi. fas.* were all right, Dr. Cheeney had requested him to pay them; Cantrell said that Col. Crook had the *fi. fas.*, and that they were sent off, according to the best of witness' recollection; Cantrell told him the executions were pending for his benefit, and belonged to him; Cantrell, when asked for the *fi. fas.*, did not let witness see them; asked again for them, but did not see them, which induced witness to suspect that all was not right. The entries on the *fi. fa.* of 1850 and 1855 are, in the opinion of witness, in the hand-writing of Cantrell; sat near him in the Senate Chamber, and saw him write often; they are in the same hand, written, in witness' opinion, with the same ink and pen, and at the same time, by James Cantrell.

To this testimony plaintiffs in *fi. fa.* objected. The Court overruled the objection and admitted it to go to the jury, and counsel for plaintiffs excepted.

To understand the above testimony of Shropshire, it may be proper to state, that there were two entries on the *fi. fas.*— one made 15th February, 1850, and one made 14th December, 1855—signed, or purporting to be signed, by Wm. Taylor, L. C., and reciting that there was no property belonging to defendant whereon to levy the said *fi. fas.*

The testimony being closed, counsel for plaintiffs requested the Court to charge the jury :

1st. That if the entry of December 14th, 1855, was not necessary to keep the *fi. fa.* from becoming dormant, that is a circumstance to show that the entry was not fraudulently made. If all the other entries were properly made, they could disregard the entry of 1855; the other entries being right, the *fi. fa.* would not be dormant.

2d. That if Taylor, the constable, was in Milledgeville and requested Cantrell to make the entries of December 14th, 1855, and if they should believe that the same was made in

Milledgeville, then it was legal, if made at the request of the constable and in his presence.

Which charge the Court refused to give, but charged: That the plaintiffs in *fi. fa.* must show title in the defendant in *fi. fa.*, or possession after the rendition of the judgment. If this is shown, then the *onus* is cast on the claimant to show that the land was not subject. If they believe that the entries on the *fi. fas.* were made by the Justice of the Peace fraudulently, for the purpose of keeping the *fi. fas.* from becoming dormant, and without authority from the constable, then they should find for the claimants; or if the jury believe that the entries of 1850 and 1855, were made at the same time and by the same person, without authority from the constable, and not in his presence, that they might find for the claimant; that the entries made by Cantrell, to be valid, must have been made in the presence, and by authority, of the constable. But if they should believe, from the evidence, that the entries were made by Cantrell, the Justice of the Peace, in the presence of, and by the request of, the constable, and at the times they purport to be made, then they were as good as if made by the constable himself; that fraud could not be presumed, but must be shown either by positive proof or circumstances.

To which charge and refusal to charge, counsel for plaintiff excepted.

The jury found for the claimant; whereupon, counsel for plaintiffs in *fi. fa.* moved for a new trial, on the following grounds:

1st. Because the verdict is contrary to law and evidence.

2d. Because the verdict is contrary to the charge of the Court.

The Court refused the motion for a new trial, and counsel for plaintiffs except, and assign as error—

1st. That the Court erred in rejecting the testimony of William Taylor and Osborn J. Taylor, as to the reason of, and the facts and circumstances relative to, dismissing the levy of the *fi. fas.* on a bay mare, made in 1849.

2d. That the Court erred in admitting in evidence the sayings of James Cantrell, as above stated.

3d. That the Court erred in its charge and refusal to charge, as above stated.

4th. That the Court erred in refusing the motion for a new trial.

JESSE A. GLENN, for plaintiffs in error.

A. R. WRIGHT, represented by T. L. COOPER, *contra.*

*By the Court*—LYON, J., delivering the opinion.

1. For what purpose the evidence of the constable, William Taylor, and that of the Justice of the Peace, Osborn J. Taylor, in relation to the proceedings of the Justices' Court of Lumpkin county, on a question that "sprung up" in that Court, in relation to the legality of the levy on the bay mare, was offered, we are unable to see. The evidence was inadmissible for any purpose that we can imagine. If it was offered to explain a levy on the *fi. fas.*, it was inadmissible for any such purpose, as a disposition of a levy made in that way was illegal, and amounted to none at all. But on looking carefully to the *fi. fas.* themselves, or the copies thereof attached to the record, we see no levy but such as is sufficiently accounted for or disposed of, to enable the plaintiffs in *fi. fas.* to proceed with their collection against any other property of defendant that may be subject to them.

The main defense relied on by claimant to defeat the lien of the executions on the lot of land levied and claimed, so far as we can judge from the record and position of counsel taken in the argument, is, that the entry on the executions of "No property" of the dates of 15th February, 1850, and 14th December, 1855, were not the entries of the constable, whose name is signed thereto, nor made at the time they bear date, but were made by one James Cantrell, who was claimed to be the owner of them, after the *fi. fas.* had become dormant, etc., and that the entries were therefore fraudulent and void, and the executions, in fact, dormant. If these facts are true, the conclusion must be: to prove the facts, claimant offers the testimony of Wesley W. Shropshire, who testifies, that the entries of those dates are in the hand-writing of James Cantrell, and this fact is also proved by the constable himself, who says that Cantrell did make the entries for him and at his request, and, he thinks, at the dates thereof. Shropshire testifies, further, that he was in Milledge-

ville on the 14th December, 1855, and that Cantrell was there as a Senator in the Legislature from the county of Lumpkin. We do not understand the witness to say that Cantrell was himself in Milledgeville on that day, and made the entry then.

If Cantrell had an interest in these executions—if they were proceeding for his benefit, then it was to his interest to have these entries made and dated back; that is, if they had become dormant for the want of such entries; and the circumstances connected with the interview, as testified to by Mr. Shropshire, might have created a very strong presumption against the *bona fides* of these entries, that would very justly have operated materially on the minds of the jury in passing on this question. On the contrary, if Cantrell had no interest in the *fi. fas.*, there was no motive to him to fabricate a false and fraudulent entry on the same, in order to give vitality to them, which they did not otherwise have. It was, therefore, important to show that Cantrell had an interest in these executions. For that purpose, claimant proposed to prove by the witness, Shropshire, a conversation between witness and Cantrell, in relation to the execution that occurred in Milledgeville, in the winter of 1855, and what Cantrell then said to the witness about his ownership of, and interest in, the executions; who had them, and for what purpose, etc. Counsel for plaintiffs in execution objected to this evidence and the Court overruled the objection, and the witness was allowed to testify to the conversation, to what Cantrell said, etc.

2. In this the Court committed error. The executions were proceeding in the name of Chastain and Luck, for the use of C. and W. J. Peeples. They were the parties in interest before the Court to be affected by the judgment of the Court; and there was nothing before the Court except the statements of Cantrell, showing that the executions did not belong exclusively to the plaintiffs therein. They were not present when Cantrell made the statements complained of nor did they in any other manner assent thereto. Cantrell's admissions, declarations or statements could not affect the rights of these plaintiffs. They could only affect himself, and until it was shown to the Court, by other evidence, that the *fi. fas.*, did not belong to the plaintiffs, but to Cantrell, the evidence ought to have been excluded.

3. At the date of 14th December, 1855, and during that entire winter, these executions were not dormant, even if no entry had, in fact, been made since that of 20th June, 1849, which is not questioned. That fact was an important one to be considered by the jury, with all others, as to the *bona fides* of the two contested entries. For if, at the conversation with Shropshire, the *fi. fas.* were not then dormant in the absence of the two entries of 1850 and 1855, and they could not have been if the entry of 20th June, 1849, is a genuine one. There was no particular necessity, at that time, to antedate or fabricate a return or entry of no property on the *fi. fas.* Hence, the Court ought to have charged the jury on the request of counsel, that they might consider this as circumstance showing the *bona fides* of the entries.

Judgment reversed.