Warner, Chief Justice.
The defendant was indicted for the offense of false imprisonment, in that he issued a warrant of commitment as a Justice of the Peace, against one Fisher, who was alleged to have *been in contempt of the Justice Court in not paying the costs of a criminal prosecution which had been instituted in said Justice Court, and ordering the said Fisher to stand committed until said costs were paid, and who was committed to the common jail of the county under said order and warrant. On the trial the defendant, under the charge of the Court to the jury, was found guilty. Various exceptions were taken to the rulings of the Court in the progress of the trial, which are now assigned for error here.
1. The 4300th section of the Code declares, that “the arrest, confinement or detention of a person or citizen, by the warrant, mandate or process of a magistrate, being manifestly illegal, and showing malice and oppression, the said magistrate shall be removed from office; and each magistrate and all and every person or persons knowingly and maliciously concerned therein, shall be punished,” etc. The motion for a continuance of the case was properly overruled, in view of the facts disclosed in the record.
2. When the panel of forty-eight jurors was put upon the defendant, he challenged the array on the ground that the jurors were not drawn according to law. This challenge to the array necessarily included the twenty-four jurors who had been empaneled by the Court, and who constituted a part of the panel of the forty-eight put upon the defendant. Were they drawn and organized according to law? It appears from the record, that on the 28th of February, 1872, the presiding Judge of the circuit passed an order appointing three commissioners to revise the jury-box of McIntosh county. It also appears that the jury-box for that county had been revised by the commissioners on the 13th of June, 1870, and that two years had not expired up to the time of the order of the Judge to revise it; but whether juries had been drawn for the April term of the Court as provided by the *264 Act of 1869, the record does not inform us. But it does appear in the record that after revising the jury-box under the order of the Court, the commissioners, and the Ordinary with the clerk, did proceed to draw grand and petit jurors for the next approaching term *of the April adjourned Court, on the fourteenth day of March, 1872. This, we presume, was done under the provisions of the third section of the Act of 1869. Whether that jury was legally drawn or not, we are unable to say from the confused and unsatisfactory statement of facts disclosed by the record. But conceding the juries were regularly and legally drawn, the next question that arises in the case, is as to the legal power and authority of the Court to purge that jury in the manner disclosed by the record, and to compel the defendant to select his jury from the twenty-four so purged, and composing a part of the panel of the forty-eight? It appears from the record that on the first day of the Court, and after the Court had been organized, a motion was made to have the jury purged to ascertain whether they were intelligent and upright jurors. The Court appointed a committee of three to take out and examine the juries, to see if they came up to the standard stated by the Court, to-wit: whether they could read the Constitution of the United States, and the Constitution of this State, and write. After the committee had privately examined the juries, they reported to the Court that there were eight colored men and two white men, who could not read and write according to the views of the Court. Whereupon the Court excused them from serving at that term of the Court, and ordered the sheriff to fill up the panels with jurors from the jury list who could come up to the standard as ruled by the Court, which was done. The twenty-four jurors thus purged by the order of the Court constituted a part of the panel of the forty-eight put upon the defendant, instead of those who had been selected by the Ordinary, clerk of the Superior Court, and the three commissioners, and drawn from the jury-box to serve as jurors for that term of the Court. The law gives to the officers specified in the Act of 1869, the power and authority to judge of and to select from the book of the receiver of tax returns “upright and intelligent persons” to serve as jurors, and not the Superior Court, or the Judge thereof.
*3. The challenge to the array of the jurors put upon the defendant in this case was well taken, and should have been allowed by the Court, and it was error to compel him to select his jury therefrom. Ten of the jurors constituting the panel put upon the defendant were not selected and drawn according to law, for the reasons before stated, and that was a distinct ground of challenge made to them by the defendant.
4. The defendant was indicted under section 4300 of the Code for false imprisonment under color of legal process, as specified in that section; he was not indicted under section 4432 for malpractice in office as a Justice of the Peace, and, therefore, was not entitled to the right of appearing and being heard before the *265 grand jury, when the bill of indictment was found against him.
5. The Court charged the jury, amongst other things: “If you find from the testimony and the warrant that it was manifestly illegal, the law presumes malice, as the law presumes every officer knows the' law, and will act in conformity thereto in the issuing of any warrant, mandate or process.” This charge of the Court, in view of the statute under which the defendant was indicted, was error. The warrant of commitment must not only have been manifestly illegal, but the arrest, confinement and detention of Fisher under it should have been shown to have been malicious and oppressive. The law does not presume malice against a judicial officer because he renders an illegal judgment, or because, in the discharge of his official functions, he does an illegal act; nor does the statute under which the defendant is indicted so contemplate. “The arrest, confinement and detention of a person by the warrant, mandate or process of a magistrate, being manifestly illegal and showing malice and oppression,” are the words 'of the statute. The law does not presume malice against the magistrate from his mere illegal act in issuing the warrant of commitment, but that presumption may arise from his conduct when taken in connection therewith.
Let the judgment of the Court below be reversed.