## POLLARD *v.* THE STATE.

1. The right of trial by jury, as guaranteed by article 6, section 16, paragraph 1, of the constitution of this State, involves as a necessary and indispensable prerequisite the right of one indicted for felony to select the jury for the trial of his case from an array or panel indifferently drawn or chosen from the whole body of citizens, and not from a restricted number thereof, qualified to serve as jurors for such trial.
2. Under the law of this State the names of all persons qualified to serve as jurors for the trial of criminal causes, including the names of grand and petit jurors, are required to be entered upon the petit-jury list and placed in the petit-jury box.
3. The names of "not exceeding two fifths of the whole number" of persons qualified to serve as traverse jurors for the trial of criminal causes are entered upon the grand-jury list and deposited in the grand-jury box.
4. Accordingly, it was good cause of challenge to the array, in the trial of a felony case, that the entire panel of forty-eight jurors put upon the defendant was drawn by the presiding judge exclusively from the grand-jury box. The error in overruling the challenge to the array, based upon the ground stated, rendered the subsequent trial of the defendant nugatory, and it is unnecessary to pass upon the other assignments of error.

No. 920. SEPTEMBER 14, 1918.

Indictment for subornation of perjury. Before Judge Hill. Fulton superior court. April 30, 1917.

*James L. Key, F. A. Hooper, J. S. McClelland,* and *R. R. Jackson,* for plaintiff in error.

*John A. Boykin, solicitor-general, E. A. Stephens,* and *R. P. Jones,* contra.

GEORGE, J. William Pollard was indicted and tried for a felony. Before arraignment he filed a challenge to the array of jurors put upon him, on the ground that the panel of forty-eight jurors was drawn exclusively from the grand-jury box, and that therefore an illegal jury was put upon him and he was thereby deprived of a trial by jury as guaranteed by article 6, section 16, paragraph 1, of the constitution of Georgia, which declares that "The right of trial by jury . . shall remain inviolate," and of due process of law as guaranteed by article 1, section 1, paragraph 3, and of the equal protection of the law as guaranteed by article 1, section 1, paragraph 2, of the constitution of Georgia. In his challenge to the array the defendant insisted that he was entitled to a trial by a jury drawn and selected as juries are drawn under the law of this State for the trial of all felony cases, that is, from the petit-jury box. He prayed that the jury impaneled and put upon him be discharged, and that a jury drawn according to the laws of the land be put upon him. The court overruled the challenge to the array, and compelled the defendant to select a jury from the panel drawn exclusively from the grand-jury box. To this ruling the defendant excepted pendente lite. The trial resulted in a verdict of guilty, and the defendant made a motion for new trial upon several grounds. His motion was overruled, and he excepted, assigning error upon his exceptions pendente lite to the order overruling the challenge to the array of jurors.

"If the jury was improperly impaneled at common law, and the objection went to the panel as a whole, the defect could be taken advantage of by a challenge to the array. Likewise, under the system of selecting jurors by a board of jury commissioners, if the objection goes to the validity of the panel as a whole, it can be made by way of challenge to the array. *Thompson* v. *State,* 109 *Ga.* 272 (34 S. E. 379)." *Carter* v. *State,* 143 *Ga.* 632, 639 (85 S. E. 884) ; Penal Code, § 998. In *Boon* v. *State,* 1 *Ga.* 631, it was held: "It is a good cause of challenge to the array in a criminal case, that the tales jurors presented on the panel and put upon the prisoner were drawn from the grand-jury box by the presiding judge, and the list of the names so drawn was furnished to the sheriff by the court with instructions to summon them to serve as tales jurors on the trial." In that case it was strongly inti-

mated that there was no statute of the State which authorized grand jurors to serve as tales jurors for the trial of criminal causes. In *Rouse* v. *State*, 4 *Ga.* 136 (4), it was held that "Grand jurors are competent talesmen to try criminal causes." The opinions in both cases were by Lumpkin, J. In the *Rouse* case the challenge was upon the ground that the panel had been taken exclusively from the petit-jury list—exactly the reverse of the practice repudiated in the *Boon* case. Boon's trial occurred in 1846, and Rouse's trial in 1847. Under the 38th section of the judiciary act of 1799 (Prince, 428) it was made the duty of the clerks of the superior courts of the several counties in the State to procure from the tax-collectors of the respective counties and furnish to the court a list of all persons liable and qualified to serve as grand and petit jurors. Under that act, "All free male white citizens, above the age of twenty-one years, and under sixty years, are declared to be qualified and liable to serve as petit jurors for the trial of all civil causes— for the recovery of debts or damages, to any amount whatsoever— but no person shall be capable to be of a jury for the trial of treason, felony, breaches of the peace, or any other cause of a criminal nature, or of any estate of freehold, or of the right to title of any lands or tenements, in any court of record within this State, who shall not be qualified to vote at elections for members of the legislature." Marbury & Crawford, 303. By section 39 of the judiciary act, the clerks of the several courts were required to correct the several jury lists annually, by "particularly specifying, in distinct columns, the persons most able, discreet, and qualified . . to serve as grand jurors," and the clerk was further required to fairly enter the jury lists in a book for that purpose, "distinguishing in separate columns the persons selected to serve as grand jurors, and those for the trial of civil and criminal causes as aforesaid, . . and the names of the persons so selected shall be written on separate pieces of paper and put into the different apartments of a jury box, . . in the construction and manner hereinafter prescribed, to wit: There shall be an apartment in the said jury box marked No. 1, in which shall be placed the names of all the persons selected to serve as grand jurors; and another apartment marked No. 2, in which shall be placed the names of all the persons selected for the trial of civil and criminal causes as aforesaid." The further provisions of the judiciary act of 1799 were considered in the *Rouse* case, supra, and the court concluded

29

that "If grand jurors are competent, then, to try criminal causes, it is apparent that it must be by authority derived from some other source than our own State legislation. In other words, it must be upon the principle of Magna Charta and the common law, as guaranteed by the constitution." Reference is made to the constitution of 1798, and the conclusion is that the provision in that constitution, preserved in substance in all our constitutions, that "the right of trial by jury shall remain inviolate," is but the statement of the common law as interpreted by Blackstone and as universally applied by the English courts. To quote further from the opinion: "By the common law all persons are entitled to be tried by their peers. This privilege is guaranteed by the constitution to every citizen of this State. . . How, then, is this fundamental principle in criminal trials to be secured? By holding every citizen of the county, qualified by law to serve as a juror, competent to be presented on the array by the sheriff, and it is then for the accused to select twelve for his jury, who, 'from situation, condition in life, education, morals, employment, and other circumstances,' he shall feel to be his equals." This conclusion reached in *Rouse's* case is in complete harmony with the ruling in *Boon's* case. So far as material here, the principle in both cases is that the panel or array, when drawn by the trial judge, must be indifferently chosen and from the whole body of the citizens of the county qualified to serve as jurors. In 1846-47 the grand jurors did not constitute the whole body of qualified jurors; neither did the petit jurors. In *Woolfolk's* case, 85 *Ga.* 69, 90 (11 S. E. 814), "the judge during the trial, when additional talesmen were needed, drew their names, some of them from the grand-jury box, and some of them from the petit-jury box." In the course of the opinion, by Simmons, J., it was said: "The uniform practice in the superior courts, so far as I know, since the passage of this act [Acts 1880-81, p. 120; Penal Code, 1910, § 862] has been that the judge, when a great number of jurors are required, draws from both boxes. And the statute expressly authorizes this; for it does not say that he may draw from the petit-jury box, or from the grand-jury box, but from the 'jury boxes.' . . If the judge were to confine himself to the petit-jury box in the drawing, the most intelligent and upright men in the community might not be called upon to serve upon the jury in criminal cases. Only two fifths of the qualified jurors in the county can be placed in the grand-jury box; and we

presume that when the judge drew five from the grand-jury box and ten from the petit-jury box, he had in view this proportion. If the judge had directed the sheriff to summon the talesmen without drawing them from the box, the sheriff would have had the right, and it would have been his duty, to summon grand jurors and petit jurors indiscriminately. We think, therefore, that the judge did not err in overruling the challenge upon this ground." The trial of Woolfolk, as reported in 85 *Ga.* 69, occurred in 1889. The opinion from which we have quoted was delivered at the March term, 1890, of this court. The act of 1878 (Acts 1878-79, p. 27) was then in force. Under that act (Code of 1882, § 3910(d)) it was made the duty of the jury commissioners to revise the jury list and to select from the tax books of the tax-receiver upright and intelligent men to serve as jurors, and the names of the persons so selected were to be written upon tickets. "It shall be the duty of said jury commissioners to select from these a sufficient number, not exceeding two fifths of the whole number, of the most experienced, intelligent, and upright men, to serve as grand jurors, and the jurors left after such second selection shall constitute traverse jurors." Section 3910(e) of the Code of 1882, also from the act of 1878, supra, provides: "Said jury commissioners shall place the tickets containing the names of grand jurors in a box to be provided at the public expense, which box shall contain apartments marked number one and two, from which grand jurors shall be drawn as now provided by law, and said jury commissioners shall place the tickets containing the names of traverse jurors in a separate box, to wit, the jury box now in use, or other similar box, from which traverse jurors shall be drawn as now provided by law." Attention is called to the fact that at the time of the trial of Woolfolk, the grand-jury box did not contain all of the qualified jurors of the county; neither did the petit-jury box. The two combined did contain the whole body of citizens who under the law were qualified to serve as jurors. The essential principle in the *Boon* case, the *Rouse* case, and the *Woolfolk* case, is, therefore, that the right of trial by jury, as guaranteed by the constitution of this State, is the right to select a jury from a panel or array of jurors indifferently drawn from the whole body of qualified jurors of the county. In 1892, and after the decision in the *Woolfolk* case, the legislature amended the act of 1878 (Code of 1882, § 3910 (d), (e), and provided that the jury commissioners,

in the revision of the jury list, shall select from the books of the tax-receiver upright and intelligent men to serve as jurors, and shall write the names of the persons so selected on tickets as required by law, and "they shall select from these a sufficient number, not exceeding two fifths of the whole number, of the most experienced, intelligent, and upright men to serve as grand jurors, whose names they shall write upon other tickets. The entire number first selected, including those afterwards selected as grand jurors, shall constitute the body of traverse jurors for the county, to be drawn for service as now provided by law." The tickets containing the names of grand jurors shall be placed in a box by the commissioners, from which grand jurors shall be drawn as provided by law, and the tickets containing the names of traverse jurors in a separate box, from which traverse jurors shall be drawn as provided by law. Acts 1892, p. 61; Penal Code of 1910, §§ 820, 821. This act is now the law of this State, and under its provisions the petit-jury box contains the name of every grand juror as well as the name of every petit juror in the county. The grand-jury box does not contain the names of more than two fifths of the qualified jurors of the county, that is, jurors qualified to try criminal causes.

It is true that section 862 of the Penal Code of 1910 (of force and effect at the time of the trial of *Woolfolk*) authorizes the presiding judge to draw tales jurors from the "jury boxes" of the county, if a jury can not be made up of the regular panels. Section 863 likewise provides that the presiding judge may draw the tales jurors from the "jury boxes" of the county, when the regular panels of petit jurors, or either of them, can not be furnished to make up panels of forty-eight for the trial of felonies, or panels of twenty-four for the trial of misdemeanor causes. When, from challenge or from any other cause, there are not a sufficient number of jurors in attendance to complete the panel of forty-eignt jurors, the judge may in his discretion draw the tales jurors from the "jury boxes" of the county, as provided in section 867 of the Penal Code. Every section in our present code which in terms authorizes the judge, under any circumstances, to draw the tales jurors for the trial of criminal causes from the "jury boxes" was enacted at a time when the whole body of qualified jurors were to be found in both the grand and petit-jury boxes, and not in either box alone. They were enacted prior to the legislation of 1892, noted above,

under the operation of which the name of every qualified juror in the county is now found in the petit-jury box, but only a portion, "not exceeding two fifths of the whole number" of qualified jurors, is found in the grand-jury box.

It is suggested that the controlling question is, did the accused have a fair trial by an impartial jury? It is also said that statutes regulating the selection, drawing, and summoning of jurors are intended to distribute jury duties among the citizens of the county, provide for rotation in jury service, and are merely directory. This is undoubtedly true. See *Rafe* v. *State*, 20 *Ga.* 60. Obviously, however, a disregard of the essential and substantial provisions of the statute will have the effect of vitiating the array. In the *Rafe* case, supra, it was ruled that such statutes, that is, statutes regulating the selection, drawing, and summoning of jurors, "are no part of a regulation to secure to parties impartial juries." It would perhaps be more accurate to say that such statutes are not primarily designed to secure to parties impartial juries. Certain it is that they were not designed to destroy the right of trial by jury nor to permit its destruction under the guise of legislation. Since they do not form any part of the constitutional scheme to secure to parties impartial juries, the right of trial by jury is not affected by such statutes. Under such statutes the competency of jurors may be determined, and the judge is given power and direction to draw juries in such a manner as to distribute jury duty equally among the citizens of the county. When it has been determined who are competent and qualified jurors, the constitutional guaranty takes hold of the situation, and is entirely unaffected by any merely regulatory statutes that may have been passed for the purpose of distributing jury duty among the citizens of the county. The jury commissioners are, under our law, the judges of the qualifications of the citizens to be placed on the jury lists and in the jury boxes of the county. Neither the opinion of witnesses nor of judges can override their discretion when legally exercised. *Dickens* v. *State*, 137 *Ga.* 523 (73 S. E. 826); *Wilson* v. *State*, 69 *Ga.* 224, 238; *Thomas* v. *State*, 67 *Ga.* 460 (1), 463; *Campbell* v. *State*, 48 *Ga.* 353, 356. In the trial of Bridges' (*Bridges* v. *State*, 103 *Ga.* 21 (29 S. E. 859), it became necessary to complete a panel of jurors, and talesmen who had served during the preceding week of the court, and whom the judge had directed to report for duty during the week in which the case was tried, were, by direction of

the judge, placed upon the panel. It was there held that the court could have drawn additional jurors under section 858 of the Penal Code of 1895, or he could have ordered the sheriff to summon tales jurors from among persons qualified by law to serve as jurors, but that the direction given to the clerk was erroneous, and that the challenge there filed to the array should have been sustained. That decision does not rule the precise question here presented, but in principle is consistent with the conclusion here reached. If the sheriff, as was the custom at common law, summons the tales jurors for the trial of criminal causes, he must do so indifferently, and he must select from the whole body of jurors qualified by the law to serve as such. It is not within the power of the judge to limit the number from which he shall make his selection. Neither is it within the power of the judge to draw a jury for the trial of criminal causes from a part or portion only of the qualified jurors of the county. If the judge can draw the entire panel of jurors from the grand-jury box alone for the trial of one criminal case, he may do so in all such cases. He may thereby indirectly accomplish what he can not directly do, that is, override the judgment of the jury commissioners and exclude at least three fifths of the qualified jurors of the county from the trial of every criminal cause. See *Carter* v. *State,* supra. The essentials of a jury trial, as guaranteed by the constitution, so far as involved in this case, are preserved when traverse jurors are drawn from the petit-jury box as provided in section 856 of the Penal Code. See also §§ 819, 820, 822, 823. But if the panel be intentionally drawn, as was admittedly done in this case, exclusively from the grand-jury box, the defendant is deprived of the benefit of the constitutional provision which declares: "The right of trial by jury . . shall remain inviolate." We are aware of decisions of this court to the effect that this provision of the constitution preserved trial by jury as contradistinguished from any other mode of trial. *Costly* v. *State,* 19 *Ga.* 614 (3), 629. We are of the opinion that the constitutional provisions quoted above preserved not merely the form or mode of trial, but the right of trial by jury in all its essential elements as it existed at common law and as it obtained in this State at the date of the adoption of our earliest constitution. *Tift* v. *Griffin,* 5 *Ga.* 185, 188, 189. We can not agree that the code sections referred to in the opinion, in which the judges are given the authority to draw traverse jurors, in certain circum-

stances, from the "jury boxes," when properly construed in the light of existing laws providing the qualifications of jurors, manner of determining the same, preparation of jury lists and jury boxes, and the method of drawing jurors, were intended to destroy what we have considered an essential element of trial by jury as guaranteed by the constitution. It follows that the error in overruling the challenge to the array will necessitate a reversal of the judgment. It is therefore unnecessary to consider and decide the questions presented in the several grounds of the motion for new trial.

*Judgment reversed. All the Justices concur.*

ATKINSON and GILBERT, JJ., concur in the result, under application of the statutes referred to in the opinion, but not in the view that there was a violation of the constitution by drawing all the panel from the grand-jury box. Those jurors were competent traverse jurors under the constitution, and it could not violate the constitution to put them on the accused.