S04A1183. HEIGHT v. THE STATE.
(604 SE2d 796)

CARLEY, Justice.

In accordance with the Unified Appeal Procedure, this Court granted an application for interim review in this death penalty case and identified two issues for consideration: (1) whether the defense can present the result of a police-administered polygraph test as mitigation evidence in the penalty phase of the trial; and, (2) whether the suggested pattern jury charge should be modified so as to identify

the "hope of benefit" that affects the voluntariness of an accused's statement under OCGA § 24-3-50 as his desire to receive a less severe sentence.

1. On January 3, 2001, Lorange Wood was beaten to death in his store. Marvin Lee Height once worked at the establishment, and he lived only a few hundred yards away. The police questioned him twice on the day of the murder, and he agreed to submit to a polygraph test the following day. The result of the examination indicated that Height was not being deceptive when he denied harming the victim. However, the police arrested him on January 11, and he was charged with malice murder in connection with Mr. Wood's death. The State gave notice that it would seek the death penalty, but refused to stipulate to the admission of the polygraph result at trial. See *Rucker v. State*, 272 Ga. 750, 751 (1) (534 SE2d 71) (2000); *Robertson v. State*, 268 Ga. 772, 779 (21) (493 SE2d 697) (1997).

Height filed a pretrial motion, seeking a ruling as to the admissibility of the result of the polygraph test as mitigation evidence during the penalty phase of the case. The trial court held a hearing at which the polygraph operator who administered the test, retired GBI Agent Swanee Owen, testified. According to Agent Owen, the examination of Height was one of approximately 3,000 polygraph tests that she conducted during her 25-year GBI career. After she informed Height of his *Miranda* rights and told him that the test would concern the murder, he signed a waiver. During the polygraph test, she asked him four questions pertaining to the crime: whether he caused any injuries to the victim; whether he was participating in a plan to cover up the death; whether he knew who the killer was; and, whether he lied to the police when he said he did not see Mr. Wood on January 2. Height gave a negative response to each of these questions and, based upon the charts generated by the polygraph, Agent Owen concluded that he was not being deceptive in his answers.

However, Agent Owen also noted her concerns about the reliability of the test. She indicated that, at the time, she believed that the examination was being administered too early in the investigation, but that her superiors instructed her to proceed despite her objections. Agent Owen's disagreement with the timing of the test was based upon the lack of specifics concerning the crime, such as information about the murder weapon, which required that she pose questions that were too general to elicit an accurate polygraph response. She also expressed her belief that conducting the test only one day after the murder could skew the result because, psychologically, the perpetrator of a crime may not accept responsibility for his actions until some time afterwards. Agent Owen further testified that she had less confidence in Height's test than any of the thousands of others she had administered.

The trial court initially ruled that the test result could be admitted as mitigation evidence. Subsequently, however, it issued an order acknowledging that, despite the less rigorous standard of admissibility for evidence proffered in the penalty phase, "a review of the relevant cases makes clear that polygraph evidence is limited to the narrow exception requiring a stipulation by both parties."

As the trial court correctly observed, it has long been recognized that, in Georgia, polygraph results are inadmissible at trial unless both parties stipulate otherwise. See *Harper v. State*, 249 Ga. 519, 524 (1) (292 SE2d 389) (1982); *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977). See also *Butts v. State*, 273 Ga. 760, 766 (14) (546 SE2d 472) (2001). The need for each party to stipulate to admissibility is a consequence of "[t]his Court's decisions regarding polygraph science . . . [which] have held polygraph results inadmissible because they are unreliable. [Cit.]" *Butts v. State*, supra at 767 (14). This bar to the admission of unstipulated polygraph results appears to be consistent with the position taken by a considerable number of other jurisdictions. See *Lee v. Martinez*, 96 P3d 291, 310-311 (N.M. 2004) (noting that 17 states, including Georgia, admit polygraph evidence only by stipulation of both parties).

However, an inflexible prohibition on admission of polygraph evidence absent a stipulation conflicts with our recognition of the expansive scope of the evidence that the defendant in a capital case in this state may present in mitigation of his sentence. Georgia law is

> permissive with regard to the scope of mitigating evidence that a jury may consider in the sentencing phase. OCGA § 17-10-30 is wholly silent on the definition of mitigating circumstances, and the "conclusion is inescapable that the legislature meant to empower the jury to consider as mitigating anything they found to be mitigating, without limitation or definition." [Cit.] . . . [A] trial court " 'should exercise . . . broad discretion in allowing *any* evidence reasonably tending toward mitigation.' " [Cit.] (Emphasis in original.)

*Barnes v. State*, 269 Ga. 345, 358-359 (27) (496 SE2d 674) (1998). See also *Green v. Georgia*, 442 U. S. 95, 97 (99 SC 2150, 60 LE2d 738) (1979) (the hearsay rule may not be applied mechanistically in the sentencing phase of a capital trial to "defeat the ends of justice"); *Collier v. State*, 244 Ga. 553, 567 (11) (261 SE2d 364) (1979) (mitigation evidence that is ordinarily inadmissible under an evidentiary rule must not be excluded automatically in the sentencing phase). If Height is found guilty of murder, the jury might conclude that the result of his police-administered polygraph is a factor weighing

against the imposition of the death sentence. See *Barnes v. State*, supra at 359 (27); *Head v. Ferrell*, 274 Ga. 399, 405 (V) (A) (554 SE2d 155) (2001) (mitigating evidence consists of "anything," including "residual doubt," that might persuade a jury to impose a sentence less than death). Other jurisdictions with similar bans on the admission of polygraph evidence recognize a limited exception when the defendant seeks to present favorable polygraph evidence in the sentencing phase of a death penalty trial. See *State v. Porter*, 698 A2d 739, 779 (III) (Conn. 1997) (Connecticut's per se ban on the admission of polygraph evidence does not apply to mitigation evidence presented during the sentencing phase of a death penalty trial); *State v. Bartholomew*, 683 P2d 1079, 1089 (II) (Wash. 1984) (polygraph evidence may be admissible by defense at sentencing phase of a capital case). See also *Paxton v. Ward*, 199 F3d 1197, 1211-1216 (V) (B) (10th Cir. 1999) (prosecution may not apply a per se bar on polygraph evidence so as to abridge a capital defendant's right to present mitigating evidence in seeking imposition of a sentence less than death); *Rupe v. Wood*, 93 F3d 1434, 1439-1441 (9th Cir. 1996) (trial court's refusal to admit polygraph results in penalty phase pursuant to general rule of inadmissibility violated capital defendant's right to present mitigating evidence).

Therefore, we conclude that Georgia's general ban on the admission of polygraph test results absent the parties' stipulation should not be applied automatically in the sentencing phase of a capital case so as to prevent the defendant from presenting a favorable polygraph test result. "[E]videntiary rules may be trumped by a defendant's need to introduce mitigation evidence. [Cits.]" *Barnes v. State*, supra at 359 (27). Therefore, to the extent that *Baxter v. Kemp*, 260 Ga. 184, 187 (8), n. 4 (391 SE2d 754) (1990) or any other case intimates that unstipulated polygraph results are per se inadmissible as mitigation evidence, it is hereby overruled. We caution, however, that today's holding should not be misconstrued as authorizing the admission of polygraph test results in the penalty phase of every capital case. While the scope of permissible mitigation evidence is wide, it is not so extensive as to allow "the wholesale admission of all evidence contended to be mitigating without respect to its reliability . . . ." *Gissendaner v. State*, 272 Ga. 704, 714 (12) (532 SE2d 677) (2000). When the defendant seeks to introduce unstipulated polygraph test results as mitigation evidence, the trial court must exercise its discretion to determine whether those results are sufficiently reliable to be admitted. See *Gissendaner v. State*, supra (when determining the admissibility of proffered mitigating evidence, the trial court must consider whether substantial reasons exist to assume its reliability). See also *People v. Maury*, 68 P3d 1, 65-66 (II) (D) (1) (Cal. 2003) (court did not err by finding capital defendant's favorable

polygraph test result to be inadmissible in the penalty phase because its possible probative value was outweighed by its "doubtful reliability"). In this case, the trial court did not make any findings of fact with regard to the reliability of the unstipulated polygraph test administered to Height, but instead applied the per se rule of inadmissibility of such results. Therefore, we reverse the judgment and remand the case to the trial court for a ruling on the reliability of the particular polygraph test that Height seeks to admit in the penalty phase.

2. Insofar as modification of the suggested pattern jury charge on "hope of benefit" is concerned, it appears that the State raised this issue below. However, our review of the record also shows that the trial court never entered any order indicating what jury charge it proposed to give at trial. Therefore, this is not a matter which can be addressed on appeal. See *Cheeks v. Miller*, 262 Ga. 687, 689 (425 SE2d 278) (1993) (this Court not authorized to render an advisory opinion on hypothetical and legal questions that have not yet arisen). Moreover, the State does not have a right to appeal a ruling as to an anticipated jury charge. See OCGA § 5-7-1; *State v. Martin*, 278 Ga. 418 (603 SE2d 249) (2004).

*Judgment reversed and case remanded. All the Justices concur.*

DECIDED NOVEMBER 8, 2004.

*Garrett & Gilliard, Michael C. Garrett, Joe H. Thalgott, Holly L. Geerdes*, for appellant.

*Ralph M. Walke, District Attorney, Peter F. Larsen, Kelli A. Devaney-Jackson, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellee.