S07A1460. HARPER v. THE STATE.
(657 SE2d 213)

CARLEY, Justice.

Richard Scott Harper was charged with the murder of Thad Reynolds and with related crimes, and the State gave notice of its intent to seek the death penalty. This Court granted interim review and directed the parties to address the following two questions: (1) whether the trial court erred in denying a challenge to the grand jury on the ground that someone other than the person intended to be summoned served on the grand jury; and (2) whether the trial court erred in denying a motion to suppress evidence seized during a search of Harper's desk at work.

---

1. The record shows that a grand jury summons was issued to "William A. Conner" at a certain address. The summons did not list a birth date. It was received by William A. Conner, *Sr.*, who lived at the address on the summons, and he actually served on the grand jury. Both the grand jury list created by the jury commission and the list of jurors appended to the trial court's order to summon jurors for this case listed only a "William A. Conner" with the birth date of April 12, 1977, which is the birth date of William A. Conner, *Jr.* Testimony in the trial court showed that William A. Conner, Jr., had moved away from the county at least ten years earlier, but maintained a "permanent address" in the county at his sister's house, which had a different address than that to which the jury summons was directed. The testimony was clear that William A. Conner, Jr., had never lived at the address appearing in the jury commission's records, the order to summon jurors, and the jury summons. The director of the jury management office testified that she believed the wrong person had served on the grand jury. However, it is not completely clear from the record whether she was right, as it is possible that the address listed on the jury summons and in the jury commission's records was correct and that the birth date in those records was incorrect. The trial court's order addressing this issue assumed for the purpose of its analysis that the wrong person served on the grand jury. The trial court also found that the juror who served was otherwise qualified to serve. See OCGA § 15-12-60.

Assuming that the wrong person actually served on the grand jury, a timely challenge would be valid. *Turner v. State*, 78 Ga. 174, 180 (2) (1886). The holding of *Turner* is consistent with *Bazemore v. State*, 28 Ga. App. 556 (112 SE 160) (1922), which held that reversal is required where a timely claim demonstrates that someone not on the grand jury list served on the grand jury. See also *Estep v. State*, 129 Ga. App. 909, 914 (5) (201 SE2d 809) (1973) (citing *Bazemore* and *Turner*).

The State argues that service on the grand jury of someone not on the grand jury list created by the jury commission is a violation of merely directory aspects of the Code. See *State v. Parlor*, 281 Ga. 820 (642 SE2d 54) (2007) (holding that the statutory instruction to conduct a biennial revision of the grand jury list is merely directory); *Sealey v. State*, 277 Ga. 617, 618-619 (2) (593 SE2d 335) (2004) (holding that the statutory instruction to select the most upright and intelligent citizens for the grand jury is merely directory). However, we have long held that "a disregard of the essential and substantial provisions of the [jury selection] statute will have the effect of vitiating the array." *Pollard v. State*, 148 Ga. 447, 453 (96 SE 997) (1918). See also *Al-Amin v. State*, 278 Ga. 74, 80 (7) (597 SE2d 332) (2004). In this case, unlike those cited by the State, the defect was not

in complying with the statutory directives governing *how* the jury commission should select grand jurors. Instead, the alleged defect was that someone never selected by the jury commission served. "The jury commissioners are, under our law, the judges of the qualifications of the citizens to be placed on the jury lists and in the jury boxes of the county." *Pollard v. State*, supra. Where this role of the jury commission has been entirely circumvented by the service of a grand juror it never selected for service, there has been an "essential and substantial" violation of the law. *Pollard v. State*, supra. This conclusion is supported by *Turner*, wherein this Court addressed the question of what defects in the composition of a grand jury concern merely directory aspects of the Code, and specifically stated that having the wrong person serve on the grand jury would be a sufficient reason to require a new indictment. *Turner v. State*, supra at 178-180 (1), (2).

The trial court concluded that Harper's claim should fail because he has not taken the "substantive step" of showing that the grand juror in question was not qualified to serve. *Dawson v. State*, 166 Ga. App. 515, 517 (2) (304 SE2d 570) (1983). In *Dawson*, however, the "substantive step" was "the presentation of the alleged illegality with supporting facts, argument and citation of authority." *Dawson v. State*, supra. The grand juror in question in *Dawson* was shown to have been qualified for service on the grand jury because she had been selected for service in the previous term and her service had been deferred until the following term. See OCGA § 15-12-1 (a) (1) (authorizing deferral of jury service to the next term). In contrast, at least under the facts as assumed in the trial court's order, Harper has made a sufficient "presentation of . . . illegality" in the composition of the grand jury by showing that someone never selected for service by the jury commission served on the grand jury. *Dawson v. State*, supra.

However, because a finding that the wrong person served on the grand jury was neither demanded by the record nor actually made by the trial court, we vacate the judgment in part and remand the case for a ruling on that issue. See *Bibbins v. State*, 280 Ga. 283, 285 (627 SE2d 29) (2006); *Height v. State*, 278 Ga. 592, 596 (1) (604 SE2d 796) (2004). Contrary to the dissent's suggestion, we should not simply reverse the trial court's ruling. "[A]lthough a court may exercise its inherent discretion to resolve matters in the interest of judicial economy, [cit.], the goal of judicial economy cannot justify sacrificing the rights of the parties. [Cit.]" *Cincinnati Ins. Co. v. Reybitz*, 205 Ga. App. 174, 179 (1) (c) (421 SE2d 767) (1992). Nor can it justify an appellate court in usurping the role of the trial court. "An appellate court should not . . . substitute itself as the initial finder of fact to reach an issue not properly before it . . . ." *Bibbins v. State*, supra.

" '[R]esolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court.' [Cit.]" *Walker v. State*, 281 Ga. 157, 158 (1) (635 SE2d 740) (2006). In the portion of the order quoted in the dissent, the trial court recognized the conflict in the evidence and only assumed for purposes of its ruling that the jury manager was correct. Thus, the trial court did not ever draw an inference from her testimony or make any determination of her credibility. Permitting the trial court to do so on remand, since the record does not demand a finding that William A. Conner, Sr. was the wrong grand juror, could possibly allow the case to proceed under the current indictment. Therefore, not only is remand mandatory, it is the appellate remedy which actually promotes judicial economy. See *Monteith v. Story*, 255 Ga. 528, 529 (341 SE2d 1) (1986).

2. Law enforcement officers seized items in a bag from Harper's desk at work pursuant to a warrant. The trial court denied the motion to suppress the items seized, finding that the warrant was valid. As the State now concedes, the warrant was invalid and the seized items must be suppressed.

The lead investigator, Dallas Battles, sought the search warrant based on a telephone call he received from a police officer, Rodney Bailey. Bailey informed Battles that he had received a telephone call from a third party who claimed to be a member of Bailey's church and who claimed to have attended "a close-knit family meeting" in which Harper admitted his guilt. Bailey testified that the caller remained completely anonymous, but Bailey assumed that the unidentified informant was credible based on the fact that the informant had called "with a conscience." Battles prepared an affidavit with which to seek a search warrant. The affidavit referred to Bailey as a "concerned citizen." However, Battles testified that he gave oral testimony to the magistrate identifying Bailey as a police officer. The affidavit stated that the "concerned citizen" had "received information from a third party who is a family member of Scott Harper . . . that Scott Harper committed the murder of Thad Reynolds." The affidavit asserted that "the concerned citizen stated that the third party is a truthful person and has no reason to falsify the information and has nothing to gain by falsifying the information." Finally, the affidavit stated that the third party told the concerned citizen that "Harper admitted to family members that he committed the murder and has hidden the murder weapon and bloody clothing that he wore during the commission of the crime at Floyd Medical Center." The defect in the affidavit is that it presents the third party informant as being a family member, a truthful person, and someone without a motive to lie when the person who spoke to the informant had absolutely no way of knowing to whom he was speaking. In this case, unlike other cases

where an anonymous tipster's information has been corroborated, the information contained in the affidavit failed to provide any reason under the totality of the circumstances known to officers to believe that the information was from a credible source. See *State v. Stephens*, 252 Ga. 181, 183 (311 SE2d 823) (1984) (citing *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983)); *Davis v. State*, 214 Ga. App. 36, 37-38 (447 SE2d 68) (1994) (holding that an anonymous informant should not be deemed to possess the inherent veracity of a "concerned citizen" absent evidence by which the magistrate can make such a conclusion). See also 2 LaFave, Search & Seizure, § 3.3 (a), pp. 97-113 (4th ed. 2004). Accordingly, we conclude that the trial court erred by finding that probable cause was shown to the magistrate for the issuance of the search warrant.

The trial court made an alternative finding that no warrant was required for the search of Harper's desk at work, because it was unlocked and was in a workspace shared by numerous coworkers. The trial court cited *Mancusi v. DeForte*, 392 U. S. 364 (88 SC 2120, 20 LE2d 1154) (1968), but it failed to recognize that that case controls this issue favorably to Harper. In *DeForte*, officials conducted a warrantless search of an office owned by a union. The Court held that the defendant had standing to insist that evidence seized during the search be suppressed despite the fact that the union held title to the office and despite the fact that he shared the office with several other union officials. Contrary to the trial court's reasoning here, the Supreme Court stated as follows:

> It seems to us that the situation was not fundamentally changed because DeForte shared an office with other union officers. DeForte still could reasonably have expected that only those persons and their personal or business guests would enter the office, and that records would not be touched except with their permission or that of union higher-ups.

*Mancusi v. DeForte*, supra at 369 (II). Because there was no evidence that any of Harper's coworkers or supervisors gave valid consent to the search of his desk, we conclude, in light of *DeForte*, that a warrant was required for its search. The trial court's conclusion regarding Harper's desk is also contrary to *O'Connor v. Ortega*, 480 U. S. 709 (107 SC 1492, 94 LE2d 714) (1987). In *Ortega*, a plurality of the Court suggested that some office desks, filing cabinets, and similar items may be so open to the public or be subject to such general use that no one person has any reasonable expectation of privacy in them. However, the Court concluded that the desk and file cabinet in question were used exclusively by the defendant, that he regularly kept personal items in them, and that the defendant's employer did

not have any regulation or policy discouraging employees from storing personal items in their desks and file cabinets. Furthermore, a review of the concurring and dissenting opinions in *Ortega* reveals that the plurality opinion represented the most restrictive view of the defendant's privacy interest and that a majority of the Court believed that the defendant plainly had a reasonable expectation of privacy, not only in his desk and file cabinet, but also in the whole of his office. See *O'Connor v. Ortega*, supra at 729-732 (Scalia, J., concurring in the judgment), 732-748 (II) (Blackmun, J., dissenting). In light of the foregoing and our review of the evidence in the record, we conclude that the search of Harper's desk at work invaded a reasonable expectation of privacy and, therefore, that the warrant requirement applied.

The trial court refers to the items in question, which were in a bag in Harper's desk at work, as having been in "plain sight within the area to be searched." However, this rationale offers no support for the seizure of the items, because they came into plain view only by way of the unlawful search of the desk and bag.

Because a warrant was required for the search of Harper's desk at work, because the warrant authorizing the search was issued without a showing of probable cause, because no exception to the warrant requirement has been shown, and because Georgia does not have a good faith exception to the search warrant requirement, the fruits of the search of the desk must be suppressed. See *Gary v. State*, 262 Ga. 573 (422 SE2d 426) (1992) (applying OCGA § 17-5-30 (b) to hold that there is no good faith exception to the warrant requirement in Georgia).

3. Harper contends that a search of his laptop computer at work was unlawful. We exercise our discretion to decline to address this issue, which was not set forth in our order granting interim review. See OCGA § 17-10-35.1 (h) ("[T]he failure of the Supreme Court to grant review . . . shall not waive the right to posttrial review.").

*Judgment reversed in part and vacated in part, and case remanded with direction. All the Justices concur, except Hunstein, P. J., who dissents.*

HUNSTEIN, Presiding Justice, dissenting.

I agree with the majority that it is an essential and substantial violation of the law for a person who was not selected to serve on a grand jury and that when such an error occurs and the matter is timely raised, a new indictment is mandated. In this case, Harper moved to quash the indictment on the basis that William A. Conner, Junior ("Junior") was selected to serve but the person who actually served on the grand jury was Junior's father, William A. Conner, Senior ("Senior"). The majority chooses not to reverse the trial court's

denial of Harper's motion but instead vacates and remands the case for the trial court to "find" whether Junior or Senior was the person actually selected to serve.

In its order, the trial court stated:

> It is not clear whether the juror which the jury commission intended to serve in this matter was correctly identified by date of birth (and thus Junior) or by address (and thus Senior). The jury manager accepted the fact that Junior should have been the juror to serve and the Court issues its ruling as if that was the correct set of facts.

While the majority may be technically correct that the trial court did not expressly find that Senior was the wrong grand juror, it is also apparent from the trial court's ruling that the jury manager is the individual responsible for ascertaining the correct identities of persons selected for the grand jury and that the trial court credited the jury manager's conclusion. Under these circumstances, I see no reason to vacate and remand this case where the foregone conclusion is that Harper's motion to quash should be granted. Thus, I respectfully dissent to the majority's refusal to reverse the trial court's ruling.

DECIDED FEBRUARY 11, 2008.

*Christopher W. Adams, Ottrell L. Ferrell, Cox, Byington, Corwin, Neidrach, Smith & Twyman, Christopher P. Twyman, Josh D. Moore,* for appellant.

*Leigh E. Patterson, District Attorney, Natalee L. Staats, Assistant District Attorney, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.