## S08A1783. TIDWELL v. THE STATE.
### (674 SE2d 272)

MELTON, Justice.

Following a jury trial, Jerry Tidwell was found guilty of possession of methamphetamine with intent to distribute, possession of marijuana, and possession of drug-related objects. On appeal, Tidwell contends that the trial court erred in denying his motion to suppress, and in finding that OCGA § 16-13-32.2 (possession of drug-related objects) is constitutional. Because we find that the trial court erred in denying Tidwell's motion to suppress, we reverse.

The record reveals that on February 13, 2007, investigators from the Forsyth County Sheriff's Office were attempting to serve an outstanding arrest warrant on William Blackwell at the Lanier Livestock Auction in Forsyth County. Investigator Michael McCarron and the other investigators of the Sheriff's Office had previously arrested Blackwell at this site and therefore hoped to find Blackwell on the premises once again.

On McCarron's previous visit to the Livestock Auction, one of the employees, Darryl Moore, had presented himself as the shop foreman of the facility. Moore had a personal room at the facility, where he lived with his girlfriend. McCarron asked Moore for permission to search his room. McCarron received permission from Moore to search the room, but did not find Blackwell there. McCarron then asked Moore for permission to search the remainder of the facility, and Moore granted such permission.[1] McCarron then walked to the common area of the facility, where he came across a sectioned-off area that "look[ed] like a bathroom stall" with two posts marking its front entrance. A three or four foot wall obscured the view of a

---

[1] Although McCarron testified at the motion to suppress hearing that Moore gave him permission to conduct the search, Moore testified at trial that he never granted McCarron such permission. Because credibility determinations are left for the trial court, however, we must assume that permission was granted. See *Vansant v. State*, 264 Ga. 319 (1) (443 SE2d 474) (1994).

portion of the stall-like area, and McCarron looked over the top of this wall to see what was contained in the stall. The stall also had a half door at its entrance made out of plywood. McCarron saw a foam sleeping pad in the stall, as well as a grey filing cabinet and a tall wooden wall locker that was just outside of the stall and to the left of the bed. The sleeping pad had a bag of clothes on it, and McCarron was informed that the area was a "sleeping quarters [for] an individual." Tidwell was the individual who had built the wooden locker and who used the stall area as his living quarters for four days of each week while he served as a foreman at the Livestock Auction. The wooden locker had a "hasp lock that was kind of partially [closed]," but the locker door was not locked. The lock to be used for the locker was located next to the locker itself, and Tidwell had the key to this lock on his key chain.

Believing that the locker was large enough for a person to hide inside, and based on the permission he received from Moore, McCarron opened the wooden locker. The locker contained two shelves, and on the top shelf McCarron saw a digital scale, a glass smoking pipe, a lighter, sandwich bags, and a small bag of marijuana. McCarron also saw a red duffle bag in the locker, and noticed that a bag of white powder was protruding out of the side pocket of the duffle bag. The bag also contained another glass smoking pipe. McCarron asked the group of men in the room who the duffle bag belonged to and received no reply. After repeating his inquiry several times and before specifying that he had discovered contraband in the side pocket of the duffle bag, Tidwell stated that "the [duffle] bag is mine, but not the dope." The white powder discovered by McCarron was subsequently determined to be methamphetamine.

Tidwell was arrested, and on March 26, 2007, he filed a motion to challenge the constitutionality of OCGA § 16-13-32.2 (possession of drug-related objects). The trial court denied this motion the following day. On July 23, 2007, Tidwell filed a motion to suppress the evidence seized from the Livestock Auction search, and the motion was denied on October 2, 2007.

1. Tidwell contends that the trial court erred in denying his motion to suppress because the police were not authorized to conduct a warrantless search of the wooden locker that Tidwell used in connection with his workplace sleeping quarters. Because we conclude that Tidwell had a reasonable expectation of privacy in the locker, and because Moore did not have the authority to authorize the police to search the locker, we agree with Tidwell that the trial court erred in denying his motion to suppress.

"Within the workplace context, [the United States Supreme] Court has recognized that employees may have a reasonable expectation of privacy against intrusions by police." (Citation omitted.)

*O'Connor v. Ortega*, 480 U. S. 709, 716 (II) (107 SC 1492, 94 LE2d 714) (1987).

> We have no talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable. Instead, the Court has given weight to such factors as the intention of the Framers of the Fourth Amendment, the uses to which the individual has put a location, and our societal understanding that certain areas deserve the most scrupulous protection from government invasion.

(Citation and punctuation omitted.) Id. at 715 (II). With these precepts in mind, the United States Supreme Court has held that, where a doctor's government employer had no "regulation or policy discouraging employees . . . from storing personal papers and effects in their desks or file cabinets," the doctor was the exclusive user of a certain desk and file cabinet, and the doctor regularly kept several personal items in the desk and file cabinet, the doctor "had a reasonable expectation of privacy at least in his desk and file cabinets." Id. at 719 (II).

Here, Investigator McCarron saw that the workplace sleeping area used in connection with the locker contained personal effects, including clothes, a bed, a wall for privacy, and an entryway that would control unrestricted access to the area. Tidwell lived in this area for the four days out of each week that he was the foreman at the Livestock Auction, and the record does not reveal any policy that would have discouraged Tidwell from maintaining his personal items in this area. The wooden locker itself had been built by Tidwell and had a lock on it that could be secured with a lock to which only Tidwell had a key. Based on this evidence, "we conclude that the search of [Tidwell's locker] at work invaded a reasonable expectation of privacy and, therefore, that the warrant requirement applied." *Harper v. State*, 283 Ga. 102, 107 (2) (657 SE2d 213) (2008).[2]

The warrant requirement was not obviated by Moore's consent to the search of Tidwell's locker. While it is true that the State may properly show that a warrantless search was justified based on permission to search being obtained by a third party, that third party must "possess[ ] common authority over or other sufficient relationship to the premises or effects sought to be inspected." (Footnote omitted.) *United States v. Matlock*, 415 U. S. 164, 171 (II) (94 SC 988,

---

[2] It is of no consequence that the locker was not locked at the time that McCarron conducted his search. See *Harper* at 106 (2) (trial court erred in finding that no warrant was required for police to search unlocked desk at defendant's workplace).

39 LE2d 242) (1974).

> Common authority ... rests ... on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Id. at 171 (II), n. 7. The evidence does not support the conclusion that Moore had common authority over Tidwell's locker. Indeed, Moore had his own private living quarters at the Livestock Auction, and there was no evidence that Tidwell shared his own living space with Moore, or that Moore was authorized to use the wooden locker that Tidwell had built. Both Moore and Tidwell were foremen at the Livestock Auction, and neither one of them supervised the other. There was further no evidence that Moore possessed the key to the lock located next to the wooden locker.[3] Because Moore did not share common authority over the wooden locker with Tidwell, Moore's alleged consent to the search of the locker did not eliminate the need for a search warrant. See, e.g., *Chapman v. United States*, 365 U. S. 610 (81 SC 776, 5 LE2d 828) (1961) (landlord did not have authority to consent to search of house he had rented to another). Therefore, the trial court erred in denying Tidwell's motion to suppress. See id.

2. Tidwell argues that the trial court erred in finding OCGA § 16-13-32.2 to be constitutional. "We do not reach this issue, however, because we find [Tidwell's] conviction must be reversed due to the trial court's error in denying his motion to suppress evidence." *Hughes v. State*, 269 Ga. 258 (497 SE2d 790) (1998).

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 9, 2009.

*Banks & Stubbs, Rafe Banks III*, for appellant.
*Penny A. Penn, District Attorney*, for appellee.

---

[3] Again, police later discovered that only Tidwell had a key to the lock.