296 Ga. 381
FINAL COPY

S14A1347.  THE STATE v. COLVARD.

HINES, Presiding Justice.

This is an appeal by the State from an order of the superior court granting defendant Antonio Colvard's written motion to suppress certain physical evidence and his oral motion to suppress his resulting confession, to be used in his prosecution for murder and other crimes. For the reasons that follow, we affirm.

On April 27, 2012, a Fulton County grand jury returned a 13-count indictment against Colvard, charging him with murder and the related crimes of aggravated assault, theft, concealment of a death, and drug and firearms possession in connection with the January 24, 2012 fatal shooting of Robert Davis. On March 7, 2013, Colvard filed a motion to suppress certain physical evidence resulting from what initially was a warrantless search of the bedroom he used in his uncle's ("Uncle") apartment. There was a suppression hearing on July 30, 2013, at which Uncle and two police officers involved in the search testified.  At the hearing, Colvard made an oral motion to suppress his

confession resulting from the alleged illegal search.[1] Following the hearing, on August 7, 2013, the superior court entered its order suppressing the obtained physical evidence as seized pursuant to an unlawful search and Colvard's confession as "fruit of the poisonous tree."[2]

1. The State contends that the superior court erred in granting the suppression of the obtained physical evidence, alleging that the error resulted from the court improperly applying the law to the uncontroverted facts.

The superior court suppressed the obtained physical evidence after finding: Uncle testified that Colvard lived with him in an apartment in Atlanta; Uncle consented to a search of the common areas of the unit; within the apartment was a locked bedroom used exclusively by Colvard; the door had been locked by Colvard and Uncle did not have a key; Uncle could not go into the bedroom when the door was locked; testimony was conflicting as to whether

---

[1] The superior court found that the written motion to suppress physical evidence was heard just prior to beginning voir dire; that after the court announced its ruling on this motion, Colvard made the oral motion to suppress his confession; that the State announced it would appeal the court's ruling on the motion to suppress physical evidence and the parties requested that the court rule on the oral motion as well; that the parties then submitted briefs on this issue for the court's consideration; that the State did not challenge the oral motion as procedurally defective, and any issue regarding the procedural propriety of the motion was waived; and that the State acquiesced to the court ruling on the oral motion without entertaining further testimony.

[2] After finding the evidence at issue, the police stopped the warrantless search and applied for and obtained a search warrant.

Uncle told the police officer that the officer could enter the bedroom; it did not appear that the bedroom door was securely fastened; a police officer gained entry to the bedroom by placing a knife between the door lock and its frame causing the door to pop open; and police officers entered the bedroom and discovered firearms in a bag in a closet, one of which apparently was the murder weapon. The superior court then determined that the issue to be resolved was third party consent to a warrantless search; it cited as instructive *State v. Parrish*, 302 Ga. App. 838 (691 SE2d 888) (2010),[3] and concluded that Uncle did not have the authority to consent to the search.

In reviewing the superior court's ruling on the motions to suppress, this Court must be guided by three fundamental precepts: first, when a motion to suppress is heard by the trial judge sitting as the trier of fact, the judge hears the evidence and the judge's findings on conflicting evidence are analogous to a jury verdict, and consequently, should not be disturbed by the appellate court if

---

[3] Defendant Parrish was charged with possession of a firearm by a convicted felon, and the Court of Appeals affirmed the trial court's grant of Parrish's motion to suppress firearm evidence, after concluding that the police could not have reasonably believed that the third party, Parrish's wife, had common authority to grant police consent to a warrantless search of Parrish's gun cabinet.

there is any evidence to support them; second, the trial court's decisions on questions of fact and credibility are to be accepted unless they are clearly erroneous; and third, the appellate court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. *Brown v. State*, 293 Ga. 787, 802-803 (3) (b) (2) (750 SE2d 148) (2013); *Miller v. State*, 288 Ga. 286 (702 SE2d 888) (2010). Such precepts are equally applicable whether the trial court rules in favor of the State or the defendant. *Brown v. State*, supra at 803 (3) (b) (2); *Miller v. State*, supra at 286-287.

Certainly, the State may show that a warrantless search was justified based upon a third party giving permission to search; however, the third party must have "common authority over or other sufficient relationship to the premises or effects sought to be inspected" or it must be shown that the police could have reasonably believed that the third party did have such authority. *Tidwell v. State*, 285 Ga. 103, 105-106 (1) (674 SE2d 272) (2009), quoting *United States v. Matlock*, 415 U. S. 164, 171 (II) (94 SCt 988, 39 LE2d 242) (1974). See also *Illinois v. Rodriguez*, 497 U. S. 177, 183-189 (III) (B) (110 SCt 2793, 111 LE2d 148) (1990). Such common authority is derived from

mutual use of the property by persons generally having joint access

4

or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Tidwell v. State,* supra at 106 (1), quoting *United States v. Matlock*, supra at 171 (II), n. 7.

The State cites excerpts of testimony at the suppression hearing by Uncle and the police officers which it maintains show that Uncle had common authority to grant the police access to make the warrantless search of the bedroom at issue.[4] However, the circumstances as found by the superior court, sitting as the finder of fact, do not permit the conclusions that Uncle had such authority or that the police could have reasonably believed that he did. *Tidwell v. State*, supra at 106 (1). Even if the excerpts of testimony cited by the State are deemed to conflict with other portions of testimony by Uncle and the police

---

[4]The State cites, inter alia, police testimony that Uncle stated that Colvard lived in the apartment only intermittently; that Uncle stated that if his nephew was involved, the cops "need to do what they need to do"; that Colvard had a bedroom in Uncle's apartment, but he was not on the apartment lease agreement and did not pay rent; that Colvard wanted the bedroom door kept locked; that even though Uncle did not have a key to the bedroom, he sometimes went into the bedroom; that Uncle never attempted to limit the scope of the search; and that after the officers asked Uncle for consent to look around the apartment, he agreed and signed a consent to search form.

officers, it was for the superior court, as the factfinder, to assess the credibility of the witnesses and the testimony; there is plainly evidence of record to support the superior court's factual findings, and they cannot be found to be clearly erroneous. *Brown v. State*, supra at 803. Indeed, the superior court weighed all the evidence and concluded that the police could not have objectively believed that at the time of the search they had obtained valid authorization to enter the locked bedroom.[5] And, the superior court's judgment in that regard must be upheld. *Brown v. State*, supra at 802-803 (3) (b) (2).

2. The State further contends that the superior court erred in granting Colvard's oral motion to suppress his confession because it maintains that the confession was not acquired as a result of an unlawful search inasmuch as "based on a totality of [Uncle's] responses and actions during his interaction with the police, the police reasonably and objectively believed that [Uncle] had

---

[5]In its order, the superior court specifically questioned the reasonableness of the investigating officer believing that Uncle had the authority to permit the police to enter the locked bedroom in light of the fact that Uncle himself could not enter when it was locked. The superior court then cited Uncle's testimony that after one of the police officers asked him for permission to "look around the house,"

> And I said – can he walk through the house, and I told him, yes. So when he came – when he came to the bedroom where – knock on the door, he said, can I go in that bedroom right there. I said don't got no key to that bedroom. I said - then he asked me, he said, if I get in that bedroom, can I go in. I said, you ain't going to be able to get in that door. So the cop picked the lock and went in the – he didn't have no search warrant, period.

6

the authority to consent to the search, making the search valid." However, we have concluded that the superior court's judgment to the contrary was not error, i.e., that the warrantless search was not lawful because there was no valid third party consent. See Division 1, supra. The State fails to provide any basis upon which to find error in the superior court's resulting determination that Colvard's confession and other information contained in his statements constitute "fruit of the poisonous tree," and consequently, must be suppressed.[6]

Judgment affirmed. All the Justices concur.

---

[6]The question in examining the admissibility of evidence that is contended to be "fruit of the poisonous tree," is whether such evidence has been obtained by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Teal v. State*, 282 Ga. 319, 323 (2) ( 647 SE2d 15) (2007), quoting *Wong Sun v. United States*, 371 U. S. 471, 488 (83 SCt 407, 9 LE2d 441) (1963).There are two functionally similar exceptions to the exclusionary rule: the independent source doctrine and the ultimate or inevitable discovery doctrine; the independent source doctrine permits evidence that was discovered by means wholly independent of any constitutional violation, while the ultimate or inevitable discovery doctrine allows the admission of evidence discovered as a result of police error or misconduct if the State can prove by a preponderance of the evidence that such information would have ultimately or inevitably been discovered by lawful means, without any connection to the police error or misconduct. *Teal v. State*, supra at 323-324 (2). The superior court concluded that neither exception applied in this case, and the State makes no argument with regard to applicability of such exceptions.

Decided January 20, 2015.

Murder. Fulton Superior Court. Before Judge Markle.

Paul L. Howard, Jr., District Attorney, Lenny I. Krick, Assistant District Attorney, for appellant.

Andre M. Johnson, Jesse N. Bacon, Jimmonique R. S. Rodgers, for appellee.