301 Ga. 106
FINAL COPY

S17A0359.  WELBON v. THE STATE.

PETERSON, Justice.

Wayne Welbon appeals his conviction for the murder of Taurean Reeves.[1]

Welbon argues on appeal that (1) his trial counsel was ineffective for failing to

move to strike for cause a certain prospective juror; and (2) the trial court erred

by allowing the State to present testimony regarding statements he allegedly

made to the police, contending any such statements were given involuntarily.

Because the trial court applied the wrong legal standard by erroneously placing

the burden on Welbon to show that his statements were involuntary, and

because we cannot say at this stage that there was no evidence before the trial

court that would authorize the grant of a motion to suppress, we vacate the trial

---

[1] The crime occurred in February 2013.  In an indictment returned on June 18, 2013, a Fulton County grand jury charged Welbon with malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony.  At a June 2014 trial, a jury found Welbon guilty on all four charges.  The trial court sentenced Welbon to life in prison for malice murder, plus five years to run consecutively for the firearms offense, and purported to "merge" the other counts into the malice murder conviction. On July 10, 2014, Welbon filed a motion for new trial.  Welbon amended his motion for new trial via appellate counsel on June 2, 2015.  The trial court denied the motion for new trial in a written order filed on August 13, 2015.  Welbon filed a timely notice of appeal, and the case was docketed to this Court for the term beginning in December 2016 and submitted for a decision on the briefs.

court's order denying Welbon's motion for new trial and remand this case to the trial court for consideration of Welbon's claim of involuntariness under the proper standard.

1. The evidence at trial showed as follows: Welbon and Reeves sold drugs out of a green and white house at 2328 St. James Drive in Fulton County. Based on a tip, police on February 22, 2013 found Reeves's body in an area of vegetation behind the house. Reeves had multiple gunshot wounds that appeared to be rifle wounds. When police searched the house, they found bullet holes in a couch and wall and blood on the couch, walls, and floor. A GBI forensic biologist testified that testing of a piece of fabric from the couch indicated the presence of blood and DNA matching that of Reeves. A firearms examiner testified that all but four of the several dozen bullets and bullet fragments collected from the house and Reeves's body were fired from one gun, consistent with a .223 caliber rifle, which the firearms examiner testified could be an AK-style rifle. Police found on Welbon's cell phone a picture of him holding two rifles.

Jerry Gay, a convicted felon who lived across the street from the green and white house and ran errands for Reeves and Welbon, testified at trial that

he was awoken by the sound of gunshots one morning in February 2013. Gay testified that he later encountered Welbon, who said, "I killed him." Gay and Welbon then went into the green and white house, which smelled like gunpowder, Gay testified. The two went out the back door of the house, said Gay, where Gay saw Reeves's body lying on the ground and helped Welbon move it deeper into the vegetation. Gay did not say anything to police until two weeks later. Gay testified that Welbon "always say, I am going to kill him," referring to Reeves; "He says he was tired of putting money back in the pot."

Welbon did not testify, but a detective testified, over objection, that Welbon made certain statements to police.[2] In his interview with police, Welbon did not say that he killed Reeves. But, according to the detective's testimony, Welbon said that he and Reeves sold drugs out of the green and

[2] Welbon claims on appeal that his statements to police should have been suppressed, and we address that claim of error in Division 2. That claim of error, however, does not affect our assessment of the sufficiency of the evidence. When we consider the legal sufficiency of the evidence under Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), we consider all of the evidence presented at trial, without regard to whether some of that evidence might have been improperly admitted. See Cowart v. State, 294 Ga. 333, 343 (6) (751 SE2d 399) (2013). To the extent that the Court of Appeals held otherwise in Bailey v. State, 338 Ga. App. 428, 438 (4) (790 SE2d 98) (2016), we overrule that decision.

3

white house and would sometimes sleep or hang out in the house next door. The detective testified that Welbon said he and Reeves shared a key to the drug house and customers generally were not allowed inside but would conduct business through a window. The detective also testified that Welbon said he had some issues with Reeves over money. The detective said Welbon also indicated in the interview that there was an AK-type rifle in "the residence," in addition to two handguns that he had mentioned in an earlier phone conversation with the officer.

Welbon does not challenge the sufficiency of the evidence. Nevertheless, we have independently reviewed the record and conclude that the evidence, as outlined above, was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Welbon was guilty of the crimes for which he was convicted under the standard of <u>Jackson v. Virginia</u>, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Welbon argues on appeal that the trial court erred in allowing the State to present testimony regarding the statements he made to police, because those statements were made involuntarily and thus used in violation of the Due Process Clause of the Fourteenth Amendment. Welbon filed a motion to

suppress statements he made to police, and the trial court held a mid-trial Jackson-Denno hearing about the voluntariness of the statements. At that hearing, the same detective testified that Welbon was interviewed for three to three-and-a-half hours at a police station after he was arrested. Welbon wore a leg shackle that was attached to the floor, the detective testified. According to the detective, officers made no threats or promises, and Welbon never said he wanted to stop the interview. At some point, the detective told Welbon, "You and I have to have a conversation" or something to that effect, which the detective acknowledged could have been interpreted by a suspect to mean he had no choice but to participate in the interview if the suspect took the statement "extremely literally." Welbon was advised of his Miranda rights during the interview, the detective testified. During the hearing, the trial court also viewed some portion of a videotape of the interview.[3]

---

[3] The trial transcript indicates that the trial court viewed the first five minutes or so of the videotape, and the prosecutor indicated that he would put a copy of the recording into evidence. But it appears that the tape was never made a part of the record. The prosecution declined to play the videotape for the jury. Given the absence of the video, the timing of the detective's statement that he and Welbon needed to have a conversation and the reading of Welbon's Miranda rights is not entirely clear from the record. The detective appeared to agree that he advised Welbon of his Miranda rights before beginning the interview "in depth," and defense counsel indicated in her cross-examination of the detective that the comment about needing to speak with Welbon was made five minutes and two seconds into the recording of the interview. Counsel for both sides appear to agree that the detective made that comment

5

After hearing evidence and argument on the suppression issue, the trial court said simply, "All right. I am going to allow the statement." The detective subsequently testified before the jury as to Welbon's statements, including those statements noted above in which Welbon, while not confessing to the shooting, implicated himself in the charged crimes. The jury found Welbon guilty on all charges. Welbon filed a motion for new trial, claiming that the trial court erred in admitting his custodial statements.

Following a hearing, the trial court issued a written order denying Welbon's motion, concluding as to the voluntariness of Welbon's statements that:

> Welbon has not carried his burden in his final enumeration of error, as this Court ruled at his Jackson-Denno hearing that his statements were voluntarily made. In a Jackson-Denno hearing the defendant must prove by a totality of the circumstances that his statements were involuntarily made. At the Jackson-Denno hearing in the instant case, this Court held that Welbon had not carried his burden, and that a totality of the circumstances demonstrated that Welbon made his statements voluntarily.

In determining whether a defendant's statement was voluntary as a matter of constitutional due process, a trial court must consider the totality of

shortly before informing Welbon of his <u>Miranda</u> rights.

6

the circumstances. See State v. Chulpayev, 296 Ga. 764, 779 (3) (b) (770 SE2d 808) (2015). The State bears the burden of demonstrating the voluntariness of a defendant's statement by a preponderance of the evidence. See Lego v. Twomey, 404 U.S. 477, 489 (92 SCt 619, 30 LE2d 618) (1972). In reviewing such a mixed question of fact and law, we accept the trial court's finding on disputed facts and credibility of witnesses unless clearly erroneous but independently apply the law to the facts. State v. Troutman, 300 Ga. 616, 617 (797 SE2d 72) (2017).

Here, the trial court's statements show that it proceeded under the premise that Welbon bore the burden of proof on the issue of voluntariness. But this burden rests with the State. See Lego, 404 U.S. at 489. "Where the trial court has used a wrong standard in reaching its conclusion, a remand may be appropriate where legitimate factual issues are raised." State v. Davison, 280 Ga. 84, 86 (2) (623 SE2d 500) (2005); see also Bryant v. State, 268 Ga. 664, 666-667 (6) (492 SE2d 868) (1997) (noting that a failure to follow recommended procedure for determining voluntariness of statements may require a remand for clarification).

7

"[W]here there is no evidence which would authorize the grant of the motion to suppress, a remand is unnecessary." Bryant, 268 Ga. at 667 (6). But, without expressing any opinion on the merits of Welbon's argument, the unique circumstances of this case prevent us from concluding at this stage that there is no evidence that would authorize the grant of the motion to suppress. Among his arguments that his statements were not given voluntarily, Welbon points to the detective's statement to Welbon, "You and I have to have a conversation." Welbon cites the detective's acknowledgment that his remark could have been interpreted to mean participation in the interview was required. The State argues that "[t]he mere possibility that [the detective's] statement could possibly have been taken in exactly the wrong way was rightly deemed remote by the trial court." Resolution of Welbon's claim requires interpretation of the meaning of the detective's statement.[4] The exercise of interpreting the statement was one of factfinding for the trial court, which had

---

[4] The State also argues that the detective's subsequent reading of Welbon's Miranda rights made Welbon aware that he could end the conversation at any point. But even when a suspect is read his or her Miranda rights, the determination of whether the suspect made a statement voluntarily depends on the totality of the circumstances. See, e.g., United States v. Bernal-Benitez, 594 F3d 1303, 1318-1320 (11th Cir. 2010).

8

the opportunity to listen to the detective's live testimony, view some portion of the recorded interview, and thereby make judgments about credibility, tone, and context.

We might have deferred to the factual findings that resulted from that exercise had the trial court properly undertaken it. See State v. Colvard, 296 Ga. 381, 382 (1) (768 SE2d 473) (2015); cf. United States v. Hipp, 644 Fed. Appx. 943, 947-948 (11th Cir. 2016) (deferring to district court's determination that, in context, agent's statement to the defendant, "we need to talk," was not a command, but a request that the defendants listen to what agents had to say and consider cooperating). But the trial court made no specific factual findings on this point, considered video evidence not available to us, and reached its ultimate conclusion based on an erroneous standard. We therefore vacate the trial court's order denying Welbon's motion for new trial and remand the case to the trial court for its consideration of Welbon's claim of involuntariness under the proper standard, including making appropriate factual findings.[5]

_____

[5] Vacating and remanding in this manner necessarily requires a conclusion that we cannot determine at this stage that admission of Welbon's statements, if error, was harmless beyond a reasonable doubt, the harmless error standard we apply to constitutional errors. See Flournoy v. State, 294 Ga. 741, 749 (5) (755 SE2d 777) (2014). Although Welbon did not

9

Judgment vacated and case remanded. All the Justices concur.

Decided May 1, 2017.

Murder. Fulton Superior Court. Before Judge Goger.

Eric J. Taylor, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lyndsey H. Rudder, F. McDonald Wakeford, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.

---

confess, his statements corroborated considerable portions of Gay's testimony. A large part of Welbon's trial strategy was to impeach Gay as not credible, an effort Welbon's statements undermined considerably. In that light, we cannot say that admission of Welbon's statements — if error — was harmless beyond a reasonable doubt.

Given our remand, we express no opinion on the merits of Welbon's claim of error related to jury selection. If, on remand, the trial court again denies Welbon's motion for new trial, Welbon is free to again raise the jury selection issue on appeal.

10